William Kapelman, J.
A motion has been brought by the defendant under CPL 710.20 (subds. 1, 5) to suppress the in-court identification of the defendant and certain evidence taken from his room inside Apartment 52 at 531 St. Paul’s Place, County of Bronx, on October 11,1972.
The court, pursuant to CPL 710.60 (subd. 6) sets forth its findings of fact, its conclusion of law, and the reasons for its determination.
At the hearing on this motion the witnesses were Cristobal Ortiz and Defective Dennis Sullivan.
Mr. Ortiz, the superintendent at 1495 Morris Avenue, testified that nn October 6, 1972 at about 11:00 a.m. he observed one Elipher Johnson whom he knew personally as “ A. C.” and as a friend of1 the deceased, exit the building several times and deposit the clothing he was carrying into the trunk of a double- *1021 parked taxi. Mr. Ortiz further testified that on the last occasion Johnson left the building with another man. He identified the defendant in court as that other man. Ortiz testified that Johnson, who was again carrying clothing, walked out of the building to the cab, entered it with the defendant and both men left. Ortiz ,at this point wrote down the license plate number of the cab. Later that day, between 5:00 and 6:00 p.m. he learned that something had happened to Gregory Fleming, the deceased. Ortiz further testified that he met Detective Sullivan at about 7:30 p.m. on October 6, 1972 near his building and related to the detective what he had. observed earlier that day. Ortiz further testified that he next saw the detective at the Grand Jury on October 26, 1972. Thereafter on June 17, 1974 outside premises 1495 Morris Avenue, Ortiz met the detective who showed him a folder containing six photographs. Ortiz testified that he then picked out the defendant’s picture as the man who got into the double-parked cab on October 6, 1972 with Elipher Johnson, known to him as “ A. C.”. Ortiz also testified that at no time between October 6, 1972 and June 17, 1974 did anyone exhibit pictures of the defendant to him.
Detective Sullivan testified that he was assigned to investigate the murder of Gregory Fleming on October 6, 1972 and visited the scene of the homicide that day. The detective further testified that he interviewed the superintendent, Cristobal Ortiz, on the same date, and learned from Ortiz what Ortiz had seen earlier that day.
The detective further testified that Elipher Johnson, known as “ A. 0.”, voluntarily came into the squad offices of Detective Sullivan on the morning of October 11, 1972 and made certain statements to him and later, to an Assistant District Attorney concerning his own and the defendant’s participation in the taking of Fleming’s property and his death.
Sullivan further testified that from Johnson’s statements both to him and the Assistant District Attorney, he learned the nature of the property taken and the approximate location where the defendant lived, i.e., east of Third Avenue on the north side of St. Paul’s Place, the first building from the corner with a“ stoop ”. The detective testified further that he learned from Johnson that the deceased’s property was still in Lee’s home and that Lee had gone to a funeral that day and was expected back at the apartment later.
The detective also testified that after he finished processing Johnson’s arrest about 5:00 p.m., he went immediately with his partner to the general location of Third Avenue and *1022 St. Paul’s Place. There the police learned the specific address and apartment where the defendant lived.
The detective testified that he then proceeded to 531 St. Paul’s Place to Apartment 52. He did not have an arrest or a search warrant. He testified that the defendant’s brother, Joel Tutson, opened the door. The police identified themselves and stated their purpose in being there. When the brother replied that the defendant was not in the apartment, the police asked to come in. When the brother acceded, he inquired whether the police had a warrant. Detective Sullivan testified that he stated that he did not need a warrant. At that point the detective was 7 to 10 feet into the apartment; 15 to 30 seconds having elapsed since he entered the apartment. Thereafter the detective and his partner proceeded into the various rooms looking for the defendant.
The police found five or six persons in the apartment. All were told to sit on a couch in the living room. Examination of the rooms for two to three minutes failed to disclose any sign of the defendant. The detective testified that he then observed a room locked with a padlock with a hasp from the outside. When the defendant’s brother told the detective that he did not have a key for the lock, the detective broke the lock with either a knife or a screwdriver. The detective then testified that he opened the door of this room. He observed a green suitcase and one man’s shoe on the floor, the said shoe being similar to the shoe Johnson earlier observed at the deceased’s apartment. He also saw various Items of clothing on the bed, all fitting the description of the property previously given by Elipher J ohnson to him and the Assistant District Attorney. The defendant was not in that room.
The detective then left the room momentarily to inquire from those in the living room as to where defendant was and then returned to it, and seized the items he originally observed. He took from the top of a dresser the defendant’s picture, selective service and social security cards.
The detective testified that he then waited more than two hours for the defendant to appear at the apartment. When the defendant did not appear, the detective took the seized property to the 48th precinct where a relative of the deceased identified it as being the deceased’s property. The defendant was not.arrested until March, 1973.
Detective Sullivan also testified that on instructions from the Trial Assistant District Attorney, he prepared a folder containing the defendant’s picture with five others on June 16, *1023 1974. The detective further testified that he met Ortiz on June 17, 1974 outside the latter’s home about 10:30 a.m. and showed him the folder. Mr. Ortiz, he testified, identified picture number three, the defendant’s picture, as the man who was with Johnson on October >6,1972, entering the double-parked cab.
After due consideration of all the credible evidence adduced at this hearing, this court finds that the photographic display-shown to the witness Ortiz on June 17,1974 was not so unnecessarily suggestive as to render his in-court identification inadmissible. The photo display contained a sufficient number of photographs of persons exceedingly similar in appearance to satisfy the requirements of Simmons v. United States (390 U. S. 377).
In the second branch of this motion to suppress the items seized by the police on October 11, 1972 at 531 St. Paul’s Place, the defendant urges: (1) that the police entered the apartment without probable cause; (2) even assuming probable cause to arrest existing, the police violated the defendant’s Fourth Amendment rights.
The Fourth Amendment to the Constitution of the United States provides: ‘ ‘ The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.”
The issues to be determined by this court are:
1. Whether the police had probable cause to arrest the defendant;
2. Whether the entry into the apartment was lawful;
3. Whether the subsequent breaking into the locked room was permissible; and
4. Whether the seizure of the items by the police was valid.
The Constitution forbids only unreasonable searches (Ker v. California, 374 U. S. 23; United States v. Rabinowitz, 339 U. S. 56). “ The Framers of the Fourth Amendment have given us only the general standard of ‘ unreasonableness ’ as a guide in determining whether searches and seizures meet the standard of that Amendment in those cases where a warrant is not required.” (Cady v. Dombrowski, 413 U. S. 433, 448.)
The question of reasonableness under the Fourth Amendment in the first instance is for the trial court to determine. (Mapp v. Ohio, 367 U. S. 643.) “ There is no formula for the determi *1024 nation of reasonableness. Each case is to be decided on its own facts and circumstances.” (Go-Bart Co. v. United States, 282 U. S. 344, 357.)
In considering whether in a particular case the seizure was reasonable, it is not material that the police could have procured a search .warrant. “ The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances — the total atmosphere of the case.” (United States v. Rabinowitz, 339 U. S. 56, 66, supra; People v. Moschitta, 25 A D 2d 686.)
It is abundantly clear that the police had probable cause to arrest the defendant after Elipher Johnson made admissions against his penal interest and implicating this defendant (People v. Brown, 26 N Y 2d 88).
Furthermore, Johnson’s admissions were corroborated by the superintendent’s identification of him leaving the building on the morning of the homicide carrying clothing to a waiting cab. Since the police had probable cause to arrest the defendant, they were justified with subsequent investigation in entering the apartment wherein the items sought to be .suppressed were found (CPL 140.15, subd. 4; CPL 120.80, subd. 4).
This court finds that the.police officers complied in all respects in giving notice of their authority and purpose to the brother of the defendant who answered the door.
Once the police had the right to enter the apartment for the purpose of arresting the defendant, that right extended to any room where the defendant might have been. Moreover, when the police officer observed that the defendant was not in any room in the apartment he had examined and he then observed the locked door it was reasonable for the officer to assume that the defendant might be secreting himself behind that door in a manner deliberately designed to avoid arrest. Bearing in mind that the defendant’s brother was present with five or more others and the officer’s belief that the brother was lying in his answers relative to the defendant’s whereabouts, the officer was fully justified in breaking the lock on the door and entering that room to look for the defendant.
The officer’s primary intent to arrest the defendant in the apartment and not to search it is. demonstrated by his search for defendant and not immediately grabbing the stolen property and his continued presence for two to three hours there waiting for the defendant to appear; Once inside that locked room, the officer had the right to seize any evidence in open view *1025 (Ker v. California, supra; Coolidge v. New Hampshire, 403 U. S. 443; Harris v. United States, 390 U. S. 234; Frierson v. United Stakes, 299 F. 2d 763, cert. den. 371 U. S. 963). “If recognizable contraband or fruits or instrumentalities in open view in the street or in a place lawfully entered by the police without any element of trespass or fraudulent invasion of the rights of citizens are found by the police, this is not a search but a seizure, and nothing in the .Constitution inhibits the seizure of property, the possession of which constitutes a crime.” (People v. Manzi, 38 Misc 2d 114,117, affd. 21 A D 2d 57.)
It then follows, therefore, that where the initial entry was not a trespass or fraudulent invasion of the rights of the defendant, the seizure of the items on the bed, floor and on the dresser was valid.
In People v. Ball (41 A D 2d 689), the police in a burglary investigation were voluntarily admitted into the premises by one of the occupants. While questioning the appellant and two other suspects inside the house, the police seized part of a watch on a shelf in plain view above the suspects’ heads.
In sustaining the validity of the seizure, the court stated (p. 689): “ Since the police lawfully gained entry to the premises, they were entitled to seize evidence in plain view without a warrant even though arrest was not made until several days later. ’ ’
In a case strikingly similar to the case at bar, People v. Payton (N. Y. L. J., June 10,1974, p. 17, cols. 5 and 6), the police having probable cause to arrest the defendant for murder, lawfully broke into his apartment without an arrest warrant or a search warrant. Although the defendant was not inside the apartment, the police seized a shell casing on a stereo in open view. Other items were also seized during a search of a closet and drawer. While the court did suppress the items seized from the closet and drawer, the court sustained the validity of the seizure of the shell casing taken from the top of the stereo.
Accordingly, the motion for an order to suppress the in-court identification of the defendant and the physical evidence seized is denied in all respects.