**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William FRIERSON, Defendant-**
**Appellant.**

**No. 13425.**

United States Court of Appeals
Seventh Circuit.

Feb. 27, 1962.

Rehearing Denied April 4, 1962.

764

Lucas T. Clarkston, Maurice Scott, Jr., Chicago, Ill., for defendant-appellant.

James P. O'Brien, U. S. Atty., Robert A. Maloney, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, John Powers Crowley, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, SCHNACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Defendant, William Frierson, charged in an indictment with concealing and facilitating the concealment and transportation of a narcotic drug in violation of 21 U.S.C.A. § 174, was found guilty by a jury and was later sentenced to a term of imprisonment.

Defendant appeals on two grounds: 1) a motion to suppress evidence consisting of heroin found in defendant's apartment was erroneously denied; and 2) the evidence was insufficient to sustain the verdict.

The government's evidence leading to defendant's arrest may be summarized as follows. A federal narcotics undercover agent, during September and October, 1960, bought narcotics on five occasions from Willard Wyatt, a "pusher" or dealer. Wyatt told Jackson, the undercover agent, that his new connection was named Brother. Wyatt also supplied a telephone number where he could be reached. Jackson testified he had known

defendant for ten years; that defendant was also known as Frank Brother; and that the telephone number he was given was listed under the name of defendant's wife at defendant's address in Chicago.

Another federal narcotics agent, Meyer, testified that he had watched Wyatt's movements during the period when sales of narcotics had been made to agent Jackson; that on these occasions after Wyatt met Jackson and received sums of money Wyatt would go to defendant's apartment building and later meet Jackson to deliver the narcotics. Meyer said he had seen Wyatt and defendant together on at least three of these occasions. He also testified that he saw Wyatt at defendant's address on the evening of October 20, 1960; that after meeting defendant, Wyatt met agent Jackson and then returned to defendant's apartment. When Wyatt left the apartment shortly after midnight, Meyer and agent Voll followed and then arrested him at the point where he was to make delivery to agent Jackson. A quantity of heroin was found in Wyatt's possession.

Based on their observances of defendant, especially on this particular evening, and defendant's past conviction and present reputation as a narcotics violator, the agents proceeded to defendant's apartment intending to arrest him. Agents Voll and Olivanti went to the front door. Agents Meyer and Halpin went to the rear door. To get to the rear kitchen door of the apartment the latter had to enter through an unlocked door into a rear porch. They then waited at the rear kitchen door presumably for the purpose of preventing defendant's exit in case he should try to escape or providing help for the other agents if defendant resisted lawful arrest.

Agent Voll knocked on the front door. The door was opened by defendant. Agent Olivanti said, "We are federal narcotics agents," and showed his badge.

Defendant then opened the door, which was fastened by a night chain, a little farther and seeing Voll whom he knew, said, "Oh, it's you, Charlie. Just a minute." Thereupon he attempted to shut the door and started to yell, "Get rid of the stuff; get rid of the spoon." Upon hearing these words and the agents' attempt to enter the front door, the agents at the rear door forced their way into the apartment and apprehended defendant who was running for the side porch. By this time Voll and Olivanti had forced their way through the front door.

While Voll was questioning defendant and his wife, Meyer searched the apartment and found a small glass bottle tipped over on the dresser of the rear bedroom. There was powder in the bottle and a trail of it on the floor leading to a spoon. Tests indicated the powder was heroin. The agents were not in the possession of either a warrant for defendant's arrest or a search warrant.

Defendant denies that he shouted to his wife to get rid of the "stuff". He testified that the agents did not identify themselves and he did know who was trying to enter. He also testified that the rear bedroom was sub-rented by a woman; that a man sometimes stayed with her; and that defendant and his wife had nothing to do with that room. His testimony was supported by his wife and with respect to the rear room being sub-rented his testimony was supported by a man and a woman who claimed they had lived in the room.

The District Court denied defendant's motion to suppress the evidence obtained in the search of the apartment. Defendant contends that the arrest was illegal and that the search was in violation of the Fourth Amendment.

The government relies on 26 U.S.C. § 7607[1] as authorizing the arrest. In United States v. Walker, 7 Cir., 246 F.2d

1. That section provides in part that narcotics agents may:
   "(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * *
   where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

519, we recognized the validity of this statute and the necessity for it, as indicated by its legislative history, in implementing effective enforcement of the federal narcotics laws. At the same time we said that the individual's constitutional rights must outweigh any practical considerations which might ultimately corrode those rights. In United States v. Sebo, 7 Cir., 101 F.2d 889, 890, we defined probable cause for an arrest without a warrant as "reasonable grounds of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged."

■ In view of the foregoing facts we hold that the agents had reasonable grounds to believe defendant had committed or was committing a narcotics violation. Based on personal observances of the prior traffic in and out of defendant's residence, the apprehension of Wyatt with heroin in his possession shortly after he left defendant's apartment, defendant's prior narcotic conviction and status on the agents' list of prominent narcotics violators, and the information given to Jackson by Wyatt that defendant was his "connection", the agents were justified in approaching defendant's apartment with the intent to arrest him.

■ Defendant contends this case is controlled by Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, since the entry was made by force and the arresting officers made no announcement of their purpose in being at the door. The facts leading to the arrest in Miller are similar to those in the instant case. There, the arresting officers identified themselves in a low voice as police but before they could say more Miller shut the door and tried to prevent their entry. The officers forced the door open and made the arrest. The Supreme Court held that since no express announcement of purpose was made and it was not proved that Miller knew the purpose of the officers, the arrest was unlawful. Without passing on the question, the Court observed, "It may be that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture." Supra, at 310, 78 S.Ct. at 1196. When the agents in the instant case heard defendant say, "Get rid of the stuff," it was imperative that they enter at once in order to prevent the unlawful destruction of evidence which they could reasonably believe was in the apartment. We believe this constitutes sufficient grounds to justify a virtual certainty in the minds of the officers that defendant knew their purpose. Consequently, by reason of the exception alluded to in Miller, an announcement of purpose here would have been a useless gesture.

■ Defendant contends that the agents invaded his dwelling before they had any reasonable grounds for doing so in that the agents at the rear door had entered into defendant's private porch before any of the events at the front door had occurred. However, we think the action of the agents at the kitchen door was reasonable under the circumstances. They were about to arrest a previously convicted narcotics violator. It was a matter of precaution that some agents should station themselves inside the porch but outside the main dwelling to be able to aid their fellow agents if the defendant should attempt to resist arrest or to escape by the rear door. The evidence is overwhelming that the agents did not force their way into the dwelling proper until they had heard defendant shout, "Get rid of the stuff."

■ Once it is established that the arrest is valid, there is no question but that the search was proper. Agent Meyer's search as an incident of defendant's arrest was clearly not unreasonable within the prohibition of the Fourth Amendment. The evidence obtained was in plain sight. Accordingly, we hold that the motion to suppress the evidence thus obtained was properly denied. United States v. Rabinowitz, 339 U.S. 56, 70

S.Ct. 430, 94 L.Ed. 653; United States v. Pisano, 7 Cir., 193 F.2d 361.

Defendant, his wife, and two other witnesses testified that the room where the heroin was found was not under his control because it was rented out. From other evidence, however, the jury could properly have found that defendant knew the heroin was in the apartment, that he was "cutting" it for Wyatt, and that he was in possession and control of the room where it was found. There is no basis for the contention that the jury arbitrarily ignored uncontradicted testimony. In deciding whether the evidence is sufficient to support the verdict it must be viewed in the light most favorable to the government. United States v. Taylor, 7 Cir., 266 F.2d 310. The credibility of the witnesses is not within our province.

The judgment is affirmed.