UNITED STATES of America,
Plaintiff-Appellant,

v.

Daniel Patrick ROSSELLI, Defendant-
Appellee.

No. 73–1671.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1974.

Decided Dec. 4, 1974.

James R. Thompson, U. S. Atty., Gary L. Starkman and Royal B. Martin, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellant.

Arthur J. O'Donnell, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, CUMMINGS and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

The government asks us to overturn a finding that the warrantless, forcible entry into defendant's apartment was not justified by the officers' belief that the defendant was about to destroy a large quantity of marijuana that had been delivered to him about an hour earlier. Although we disagree with the district judge insofar as he found no probable cause to believe that defendant was in possession of contraband, we cannot say that his refusal to find justification for

the warrantless entry was clearly erroneous. We therefore affirm his suppression order.[1]

On a Sunday morning in April of 1972, five government agents watched a vehicle occupied by Allen Anderson, his wife, and their two children as it parked in front of an apartment building at 2056 West 135th Place in Blue Island, Illinois. Anderson took a large cardboard box out of the car and carried it into the building; he returned a few minutes later with the box which then appeared to be empty.

The Andersons, followed by the agents in three cars, then drove to an alley at the rear of 1326 West 127th Place in Calumet Park; Anderson removed another large cardboard box from his car and carried it up the back stairway into the apartment of Philip Rosselli, defendant's brother. Three agents entered the kitchen through a screendoor, saw Anderson and Philip Rosselli in an adjacent bedroom examining the contents of the box, and placed them under arrest. A young lady named Elizabeth Ackley, who was living with Philip Rosselli, was present in the apartment but not arrested.

The cardboard box in Philip's apartment was found to contain packages of marijuana wrapped in brown paper. After the arrest, Mr. and Mrs. Anderson both advised the agents that there was additional marijuana in the trunk of their car and gave them their car keys; an examination of the trunk revealed two more cardboard boxes containing bags of marijuana. The agents placed Mrs. Anderson under arrest and decided to return to the apartment building on 135th Street.

They left the two Anderson children with Miss Ackley in Philip's apartment and departed in four vehicles. According to their testimony, it was not until after they were under way that they asked Anderson about his first de-

livery. When asked, he stated that the first cardboard box had also contained marijuana and that he had left it with the defendant in apartment No. 6. At this point, in view of the fact that Anderson's statement was an admission against his penal interest, and was corroborated by circumstances observed directly by the agents themselves, they clearly had probable cause to believe that defendant then possessed contraband in his apartment.[2] We reject the district court's contrary finding on this point as clearly erroneous.

Ten or fifteen minutes after leaving Philip's apartment building, the agents arrived at defendant's, and proceeded to apartment No. 6. After they knocked on the door, they heard an indistinct response—either "Who?" or "What?" An agent then knocked again, called out defendant's name, and stated: "It's the police, we want to talk to you." They then heard a scuffling movement inside the apartment, someone engaging the front door chain lock, a voice calling, "Don't open the door for anybody," and footsteps running from the door to the rear of the apartment. The agents thereupon kicked down the door and entered.

They saw a child standing in the livingroom, defendant in the hall, a clear plastic bag of marijuana on the kitchen table, and several brown paper bags of marijuana in the bedroom. Defendant was arrested, and the evidence was seized.

After indictment charging a violation of 21 U.S.C. § 841(a)(1), defendant's motion to suppress was sustained. The district court heard evidence and found that there had not "been a showing in the record to support a finding that the Agents could 'reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant.' Accordingly, the Court finds that the search and seizure in the in-

---

1. Our jurisdiction of the government's appeal is conferred by the second paragraph of 18 U.S.C. § 3731.

2. *See* United States v. Carmichael, 489 F.2d 983, 986–987 (7th Cir. 1973), decided three months after Judge Lynch's order below.

stant case cannot be justified on the basis of the 'emergency doctrine' rule."[3]

The burden of justifying a warrantless, forcible entry into a private home is, of course, upon the government. *See* Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. In that setting, the citizen is entitled to maximum expectation of privacy and has no obligation to respond to a Sunday morning knock at his front door. The government contends, however, that two separate circumstances created an emergency which justified the failure to obtain a warrant:[4] First, that the risk that Elizabeth Ackley might telephone a warning to defendant made prompt action imperative; and second, that the reaction to the agents' knock at defendant's front door indicated that the marijuana was about to be removed or destroyed.

## I.

There is no merit to the first argument. In United States v. Rubin,[5] on which the government relies, the person who was arrested a few minutes before the warrantless search had yelled to gas station attendants and spectators, "Call my brother." In that situation there was no possible way in which the agents could have prevented such a call and they were entitled to assume that someone would, in fact, make it. Here, neither the Andersons nor defendant's brother made any such request of Miss Ackley; moreover, if the risk of such a call created an apparent emergency, it could have been avoided by leaving an agent with Miss Ackley and the Anderson children while a warrant was being secured.

We recognize that the evidence indicates that the agents did not learn defendant's identity or the number of his apartment until they had left Miss Ackley. In view of the nature of the Andersons' response to the agents' inquiries, however, it is reasonable to infer that this information could have been obtained before they left. More importantly, this added information did not sufficiently increase the likelihood of a telephone call from Ackley to defendant to create an emergency that did not otherwise exist.[6]

## II.

There is greater force to the government's argument that the response to the knock at defendant's door justified their conclusion that an immediate entry was essential to prevent the destruction of evidence. Nevertheless, we accept the

---

3. App. p. 9. The internal quotation is the statement of the standard by Judge Rosenn in United States v. Rubin, 474 F.2d 262, 268 (3rd Cir. 1973).

4. Both parties have proceeded on the assumption that, absent a finding that the circumstances confronting the agents amounted to an "emergency," a warrant would have been required for entry into the defendant's apartment. Since one of the purposes of the entry was the seizure of the marijuana, this assumption is unquestionably correct. Jones v. United States, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514. We therefore are not confronted with the question whether a search warrant, or indeed any warrant, would have been required if the sole purpose of the entry had been to arrest the defendant since the agents had probable cause to believe he was committing an offense. *See* Johnson v. Louisiana, 406 U.S. 356, 365, 92 S.Ct. 1620, 32 L.Ed.2d 152; Jones v. United States, 357 U.S. 493, 499–

500, 78 S.Ct. 1253, 2 L.Ed.2d 1514, indicating that the precise point has not been squarely decided by the Supreme Court. *See also* Coolidge v. New Hampshire, 403 U.S. 443, 477–478, 91 S.Ct. 2022, 29 L.Ed.2d 564; Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385, 388–391 (D.C.Cir. 1970) (en banc); *see* Vance v. State of North Carolina, 432 F.2d 984, 990 (4th Cir. 1970). *See generally* Note, The Neglected Fourth Amendment Problem in Arrest Entries, 23 Stan.L.Rev. 995 (1971).

5. 474 F.2d 262 (3rd Cir. 1973).

6. We are satisfied that United States v. Mapp, 476 F.2d 67 (2d Cir. 1973) and United States v. Evans, 481 F.2d 990 (9th Cir. 1973), are also distinguishable. In neither of those cases were the officers in a position to prevent the exigent circumstances that arose; in both cases the likelihood of the destruction of vital evidence was greater than here.

district court's evaluation of this branch of the case.

■ The standard by which the government's action is to be tested is that a warrantless search is not justified unless the agents "reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant." United States v. Rubin, 474 F.2d 262, 268 (3rd Cir.) We agree with Judge Rosenn's scholarly exposition of the reasons why the government's burden does not require proof of actual knowledge that evidence is being destroyed or removed. But when the emergency justification is advanced, we believe it is appropriate to appraise the agents' conduct during the entire period after they had a right to obtain a warrant and not merely from the moment when they knocked at the front door.[7]

■ Unlike the case before us, in *Rubin* the officers dispatched an agent to prepare and secure a search warrant as soon as they had the necessary information; they had no opportunity to avoid the critical emergency which developed thereafter. In this case, the evidence does not adequately explain why no attempt to obtain a warrant was made, or why no consideration was given to placing the defendant's apartment under surveillance while an attempt to secure a warrant was being made. Had defendant sought to leave during such a period, he could have been arrested forthwith;[8] and prior to the knock at the door a conclusion that marijuana was being destroyed could not have been justified. For presumably, if Ackley had telephoned, the contraband would already have been destroyed or removed;

alternatively, if Ackley did not call, there would be no basis for believing that defendant had any special reason to destroy his valuable merchandise.[9] In short, even taking into account the evidence relating to the difficulty of obtaining a warrant on a Sunday morning, the government has not satisfactorily explained why the agents made no attempt to secure one.

We do not suggest that the emergency which did develop was contrived by the agents. They had a right to pursue their investigation by seeking voluntary cooperation from a suspect. But certainly the emergency which did ensue was foreseeable. Moreover, this type of situation may reoccur repeatedly and might lend itself to too easy a by-pass of the constitutional requirement that probable cause should generally be assessed by a neutral and detached magistrate before the citizen's privacy is invaded. *See* Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564. This is the kind of situation in which there is an especially high risk that error may be committed even when officers are acting in the best of faith. For, as this record demonstrates, it is easy to misinterpret sounds on the other side of a closed door.[10]

Unlike the situation in United States v. Frierson, 299 F.2d 763 (7th Cir. 1962), there was no unambiguous directive to destroy evidence. In that case, the shout, "Ged rid of the stuff; get rid of the spoon," was plainly audible through a partially open door. Here, even if we assume that a contrary finding might have been justified by the evidence, we cannot brand the district

---

7. In appraising the necessity of making an immediate search of a house in order to prevent the destruction of narcotics in Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L. Ed.2d 409, Mr. Justice Black stated, in dissent: "I agree that the opportunity to obtain a warrant is one of the factors to be weighed in determining reasonableness." *Id.* at 40, 90 S.Ct. at 1975.

8. Since there was adequate probable cause to arrest, no arrest warrant would have been

needed. *See* Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (opinion of Justice Clark).

9. It is of interest that even after the agents knocked at the door and announced their office, no effort to destroy any marijuana appears to have been made.

10. The officers did not know precisely what was said in response to their first knock and erroneously concluded that persons in the apartment were destroying the marijuana.

court's assessment of the total situation as clearly erroneous.

In reaching this conclusion we have attached importance to the character of defendant's expectation of privacy, his unquestioned right to refuse admittance to his home unless a demand was supported by a warrant, the government's opportunity to anticipate and avoid the need to rely on an emergency justification, the less-than-compelling character of the evidence that a true emergency did exist, and finally, to the quality of the social interest which the invasion of the defendant's home was intended to vindicate. We accept the premise that the importance of seizing mere evidence —as opposed to contraband or the fruits or instrumentalities of crime—may justify a warrantless entry in extreme cases. But when the emergency involves no grave danger to the lives of the officers or others,[11] and when the event the officers were seeking to prevent would itself remove the contraband from circulation, society's interest in upholding the seizure weighs less heavily against the individual's interest in privacy than it might in other pressing circumstances.[12]

The suppression order is

Affirmed.

FAIRCHILD, Circuit Judge (concurring). I can agree with affirmance. The circumstances confronting the agents up to and just before their entry were sufficiently equivocal so that the view of the district court as to lack of exigency justification was not clearly erroneous.

I wish, however, to emphasize that there should be no rule that when officers first come into possession of probable cause in a situation generally similar to this case, choose to make an investigative visit, seeking the suspect's voluntary cooperation, and thus pass up an opportunity to obtain a warrant, they risk suppression if the suspect attempts to destroy evidence and the officers enter without a warrant to prevent such destruction.

11. *See* Warden v. Hayden, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782.

12. *See* McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (Jackson, J., concurring at 459–460) ; Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385, 392 (1970) (en banc) ; United States v. Bell, 464 F.2d 667, 675 (2d Cir. 1972) (Friendly, J., concurring).