**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Brian G. ALTMAN, Defendant-Appellant.**

No. 85–3222.

United States Court of Appeals, Seventh Circuit.

Argued June 17, 1986.

Decided July 31, 1986.

George Taseff, Bloomington, Ill., for defendant-appellant.

Frances C. Hilin, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Danville, Ill., for plaintiff-appellee.

Before HARLINGTON WOOD, Jr., POSNER, and FLAUM, Circuit Judges.

PER CURIAM.

Quickly rescued from three feet of water, nine pounds of hashish helped the government convict appellant Brian Altman of two counts of possession of hashish with intent to distribute. *See* 21 U.S.C. § 841(a)(1). Altman contends that the seizure violated his rights under the Fourth Amendment, thereby entitling him to reversal of his conviction. The government argues for affirmance contending that the seizure, though warrantless, was justified by exigent circumstances. We agree with the government and affirm Altman's conviction.

On the afternoon of December 13, 1984, Undercover Agent David Crouch of the Illinois Department of Law Enforcement reached a tentative agreement with James Fagen, a "sales representative" for Brian Altman, to purchase ten pounds of hashish from Altman at a price of $850 per pound. The sale was agreed to after Agent Crouch had inspected a sample of the hashish at Fagen's house. The sample had been dropped off by Altman prior to Agent Crouch's arrival. Crouch and Fagen drove to Altman's home, a one-story duplex, and parked on the street in front of the house. Agent Crouch handed Fagen $850 for one pound of hashish. Crouch had agreed to give Fagen the money for the remaining hashish if he found that the first pound of hashish was satisfactory. Fagen went into Altman's home and returned to the car shortly thereafter with one pound of hashish. Pursuant to their tentative agreement, Fagen expected that Crouch would give him the remaining money to purchase the other nine pounds from Altman. Crouch, however, immediately placed Fagen under arrest and notified nearby surveillance agents of his action. Using a

radio, Crouch also told the agents that there were nine pounds of hashish inside the house. Following Fagen's arrest, two agents went to the rear of Altman's house to secure any potential escape routes. Three other agents went to the front door and knocked. Through a window next to the front door, Agent Waldrup observed Altman come to the door and heard him ask who was there. Waldrup replied, "the police." Waldrup saw Altman turn and walk to the rear of the house. One of the agents who had been securing the rear of the house was returning to the front of the house. During his return trip, the agent looked in through a window. He saw Altman, who had his back to the window and was bent over, dropping something into what appeared to be a crawl space in the closet. He shouted to the agents at the front door to "hit it, he's trying to destroy evidence." The agents kicked in the door and saw Altman emerge from the bedroom into the living room. They placed Altman under arrest, handcuffed him, and seated him in the living room. The agents went into the bedroom where they saw an open closet door. They lifted a trap door on the closet floor and retrieved nine pounds of hashish floating in two to three feet of water in the crawl space.

■ It is clear that the agents had probable cause to arrest Altman in his home. Altman does not contend otherwise. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), however, requires more than probable cause for an in-home arrest. The police must secure a warrant unless they can show that an exception to the warrant requirement is available. In this case, exigent circumstances, specifically the destruction of evidence, provide the needed exception to the warrant requirement. *See Welsh v. Wisconsin,* 466 U.S. 740, 749–52, 104 S.Ct. 2091, 2097–99, 80 L.Ed.2d 732 (1984); *United States v. Acevedo,* 627 F.2d 68 (7th Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 587, 66 L.Ed.2d 482 (1980). The arrest of Fa-

gen, Altman's agent, took place on the street in front of Altman's house. It is not unlikely that Altman was tipped off by simply observing what was happening in front of his house. Simple curiosity, in addition to pecuniary and penal interest, would seem to lead to the conclusion that Altman watched the actions of Fagen while carrying out the drug transaction. This expectation alone might be enough to create the necessary exigent circumstances. An additional factor in this case makes it clear beyond all doubt that exigent circumstances were present. Altman expected Fagen to return almost immediately to the house with the remaining money to purchase the other nine pounds of hashish. When Fagen failed to return, an event that would occur long before a warrant could possibly be secured, Altman would then realize that there had been some problem with the drug sale. There was a serious risk that the hashish would be destroyed. Exigent circumstances were present.

Altman argues that Crouch had only agreed to purchase the additional nine pounds of hashish if the original pound was satisfactory. He contends that it would not have aroused Altman's suspicion if Crouch and Fagen had just driven off into the sunset. The argument continues that Altman would assume that Crouch decided that the first pound of hashish was unsatisfactory. This argument is meritless. The agreement to purchase the hashish was sufficiently definite in character that if it had not been completed, Altman would have been very suspicious. Agent Crouch had already examined a sample of the hashish and had paid $850 for the first pound. In addition, it would have been very odd if Fagen had not at the very least told Altman that Crouch had decided not to purchase the additional nine pounds. Defendant's argument is also meritless because when an undercover drug agent has just identified himself to a drug dealer, the situation could become dangerous. Agent Crouch was not required by the Fourth Amendment to risk his life in order to

prevent exigent circumstances from arising.

Numerous factual distinctions can be made between other drug cases and this one, but the bottom line is that the factual similarities are more striking than the differences. *See United States v. Acevedo,* 627 F.2d 68 (7th Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 587, 66 L.Ed.2d 482 (1980); *United States v. Moore,* 790 F.2d 13 (1st Cir.1986); *United States v. Wulferdinger,* 782 F.2d 1473 (9th Cir.1986); *United States v. Hicks,* 752 F.2d 379 (9th Cir.1985); *see generally* Project, *Fifteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1984–85,* 74 Geo. L.J. 499, 544–46 (1986) (collecting cases). Altman's reliance on *United States v. Rosselli,* 506 F.2d 627 (7th Cir.1974), is misplaced. In *Rosselli* the evidence of exigent circumstances consisted of the possibility that a girlfriend of the defendant's brother might have notified the defendant that some of his accomplices had been arrested. As this court pointed out, since the girlfriend was at the apartment where some of the other defendants were arrested, the police could have easily left some agents with the girlfriend until a warrant had been obtained. *Id.* at 629. In *Rosselli,* there was simply no other danger that the suspect would have been put on notice that it was in his penal interest to destroy evidence.

■ Having determined that exigent circumstances justified a warrantless arrest of Altman, we only need to determine whether the agents properly seized the hashish. Whatever the precise scope of permissible search incident to a lawful arrest made (without a warrant) in a person's home, it is plain that when the government agents observe activity that indicates that evidence is being destroyed, the agents may act immediately to save the evidence from destruction. This is exactly what the agents did here. Their actions did not violate the constitution.

AFFIRMED.