Charles REARDON and Gregory
Heinzel, Plaintiffs-Appellants,

v.

Gary WROAN, Ralph Ebert and Steve
Ploense, Defendants-Appellees.

No. 86–2141.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 16, 1986.
Decided Jan. 29, 1987.

George F. Taseff, London, Greenberg & Pleban, St. Louis, Mo., for plaintiffs-appellants.

Patrick J. Londrigan, Heyl, Royster, Voelker & Allen, Springfield, Ill., for defendants-appellees.

Before BAUER, Chief Judge,
CUMMINGS and EASTERBROOK,
Circuit Judges.

PER CURIAM.

Appellants, Charles Reardon and Gregory Heinzel, challenge the grant of summary judgment denying them relief under 42 U.S.C. § 1983 for the warrantless entry of their residence. For the reasons stated below, we reverse in part and remand.

## I

About 6:45 p.m. on December 18, 1983, defendant officers Gary Wroan, Ralph Ebert and Steve Ploense of the Normal, Illinois police force received a radio report of a burglary in progress at 608 Broadway in Normal. They knew that the address was of an Illinois State University fraternity house and that the university students were on Christmas break.[1] Meanwhile, plaintiffs Charles Reardon and Gregory Heinzel, who were residents of the fraternity (Delta Chi Fraternity), were in the house watching television in Heinzel's room located at the northeast end of the basement. According to defendants' affidavits, when they arrived on the scene—each arriving separately, first Ebert, then Wroan, and then Ploense—they found a late model Chevrolet backed up to the rear door of the residence. When Officer Wroan arrived he ran a license plate check on the car. At his deposition he stated he did not recall whether he received the results of the check. He also inspected the building for signs of a burglary, such as broken windows, and found none. The officers also stated that when they arrived, the rear door to the house was open and the building was completely dark, which they believed was inappropriate given the hour. It is not disputed that the campus residences are typically vacant during Christmas break, that the students tend to leave valuable items in their rooms during the recess, including televisions and stereo equipment, and that as a result, burglaries often occur on campus during this time of year.

On these facts, defendants, communicating by radio, decided to cover the three doors to the residence. Officer Wroan covered the rear door, located at the northern end of the house. Ebert was at the front door, located at the west end of the house, and Ploense covered the south door. There was no exit from the eastern side of the house. Wroan then entered the residence. Reardon and Heinzel headed up the stairs from the basement to investigate the noise at the rear door and they were met there by Wroan with his pistol drawn. He ordered them to halt and to stand facing the wall with their hands up. He radioed Ebert and Ploense for assistance, who thereupon entered through the north door. Reardon and Heinzel were then handcuffed and detained. They explained that they lived in the fraternity house and proved their residency about ten to fifteen minutes later when the officers matched plaintiffs' identification with their names on the mailboxes located upstairs in the fraternity house. At that point they were released.

Plaintiffs dispute several facts set forth in defendants' affidavits. They point to Heinzel's affidavit which states that all of the doors to the residence, including the door to the rear of the house, were securely closed because of the cold weather. Heinzel also claims that several lights were on in the house, including the Christmas tree lights in the front window, and that Reardon's car was normally parked in a lot adjacent to the northeast side of the building, not pulled up backwards to the rear door. Next, to support their version of the facts, plaintiffs point to the following inconsistencies between statements the officers made during their depositions and the facts presented in their affidavits. At his deposition Wroan did not recall whether, in fact, Reardon's car was backed up or parked facing forward when he arrived on the scene. And plaintiffs question Officer Ebert's ability to determine whether the rear north door was open or closed when he arrived on the scene by noting that he testified that Wroan had already entered the north door by the time Ebert arrived to assist. It is not clear that Ebert inspected the north door prior to that time. Ebert also stated that Reardon's car was parked ten to fifteen feet from the north door, which is arguably inconsistent with the affidavit statements that the car was pulled up to the door. In addition, the plaintiffs point to Ploense's statement that he found

---

**1.** The record does not indicate when the Christmas break began. Therefore, a question remains as to how close in time the incident occurred in relation to the first day of the recess.

a light on in the building when he escorted them to the mailroom to locate their mailboxes, implying that the light was on when the police arrived at the house.

## II

### Standard of Review

The grant of summary judgment is reviewed to determine if there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, a factual dispute does not preclude summary judgment unless the disputed fact is outcome determinative according to the governing law. *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir.1986) [quoting *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *certiorari denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983) ]. The reviewing court must view the entire record and all reasonable inferences drawn from the record in the light most favorable to the nonmoving party. *Id.; Valentine v. Joliet Township High School District*, 802 F.2d 981, 986 (7th Cir.1986). Once the moving party has demonstrated the absence of a genuine issue of material fact, the opposing party cannot rest on general allegations or denials in his pleadings, but rather must show through affidavits or other material that a specific factual issue exists. *Id.* As the Supreme Court recently stated: "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finding of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Finally, it should be noted that courts are generally hesitant to grant summary judgment in § 1983 actions which raise the issue of probable cause. *See, e.g., Llaguno v. Mingley*, 763 F.2d 1560, 1565 (7th Cir. 1985) (en banc); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3rd Cir. 1984). As this Court explained in *Llaguno:*

> [w]here the issue arises in a damage suit, it is, as the panel opinion acknowledged, a proper issue for the jury if there is room for a difference of opinion. The underlying issue in deciding whether the police had probable cause to do what they did is reasonableness, which is also the underlying issue in deciding negligence—a classic jury issue.

763 F.2d at 1565 (citations omitted); *Moore v. The Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1347 (7th Cir.1985); *but see Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 438–39 (7th Cir.1986).

### Probable Cause/Exigent Circumstances

■ The Supreme Court in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), set forth the standard governing warrantless entries into a person's home.[2] As the Court recently reiterated, the chief protection of the Fourth Amendment is directed toward the privacy of the home and as a result a warrantless entry of one's home is considered "presumptively unreasonable." *Welsh v. Wisconsin*, 466 U.S. 740, 748–49, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (quoting

---

2. As a threshold matter, it is necessary to address briefly whether the fraternity residence is afforded the same Fourth Amendment status as a home under the protections of *Payton.* More specifically, there is some question as to whether the hallway to the fraternity house where the plaintiffs were arrested is comparable, under a Fourth Amendment analysis, to the common areas of apartment buildings where cases have held that privacy interests are not protected under *Payton. See, e.g., United States v. Holland*, 755 F.2d 253, 257 (2nd Cir.) (Newman, J., dissenting), *certiorari denied*, 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985); *United States v. McGrane*, 746 F.2d 632, 634 (8th Cir.1984); *but see United States v. Fluker*, 543 F.2d 709, 716–17 (9th Cir.1976). Although there are certain similarities to the apartment building cases, fraternity residents clearly have a greater expectation of privacy in the common areas of their residence than do tenants of an apartment building. As the district court noted, fraternity members could best be characterized as "roommates in the same house," not simply co-tenants sharing certain common areas. Moreover, a fraternity, by definition, is intended to be something of an exclusive living arrangement with the goal of maximizing the privacy of its affairs.

*Payton*, 445 U.S. at 586, 100 S.Ct. at 1380). Therefore, absent exigent circumstances or proper consent the police may not enter a person's home without a warrant even if probable cause exists to support an entry to search or arrest. *Payton*, 445 U.S. at 590, 100 S.Ct. at 1382; *Welsh*, 466 U.S. at 749, 104 S.Ct. at 2097; *United States v. Altman*, 797 F.2d 514, 515 (7th Cir.1986) (per curiam).

In *Llaguno v. Mingley, supra,* this Court recently addressed the issue of a warrantless entry raised in the context of a § 1983 action. First, as stated above, probable cause must exist to justify the entry. In defining probable cause, *Llaguno* held that: "[t]he amount of information that prudent police will collect before deciding to make a search or an arrest, and hence the amount of probable cause they will have, is a function of the gravity of the crime, and especially the danger of its imminent repetition." *Llaguno*, 763 F.2d at 1566; *see also BeVier v. Hucal*, 806 F.2d 123, 127 (7th Cir.1986). Therefore, as stated in *BeVier*, at 127, "probable cause is a function of information and. exigency" under the formula set forth in *Llaguno*. Second, and apart from this showing of probable cause, there must exist sufficient exigent circumstances to justify the warrantless entry or the police must have acquired proper consent to enter. *Payton*, 445 U.S. at 587–88, 100 S.Ct. at 1380–81; *United States v. Paul*, 808 F.2d 645, 647 (7th Cir. 1986). For example, in *Welsh v. Wisconsin*, 466 U.S. at 752–54, 104 S.Ct. at 2099–2100, the Supreme Court held that, at a minimum, exigent circumstances do not exist when the underlying offense is minor, typically a misdemeanor. The petitioner in *Welsh* was arrested in his home for a traffic offense amounting to a civil forfeiture action, and the warrantless entry was held unlawful where the police claimed that the petitioner's blood-alcohol level would have dissipated were they to have delayed the arrest to obtain a warrant. *Id.* at 754, 104 S.Ct. at 2100 (and cases cited therein).

**A.   *Probable Cause***

Turning to the issue of probable cause, plaintiffs' argument is basically that the police did not consider all the information available to them when they arrived on the scene, and that if they had they would have concluded that there was insufficient information to justify an entry of the residence. *See BeVier*, at 127, ("[a] police officer may not close his eyes to facts that would help clarify the circumstances of an arrest"). Plaintiffs dispute several facts presented in defendants' affidavits which are assertedly material to the reasonableness of the officers' conduct and which this Court must accept as true for the purposes of summary judgment. Thus plaintiffs claim that the house was illuminated, that the car was parked normally facing forward at least fifteen feet away from the house in the parking lot adjacent to the fraternity, and that the door to the house was closed. It is also relevant to note that Officer Wroan's deposition indicates some ambiguity over whether he waited a reasonable amount of time for a report on the license plate check, and that his preliminary inspection of the house uncovered nothing suspicious.

On the other hand, defendants argue that these facts are not outcome determinative. Instead, they claim the following uncontroverted facts support a finding that there was sufficient information to justify the entry. They point to the fact that there was a radio call indicating a burglary was in progress;[3] a lone car was parked near the house in the driveway despite the fact that the university students were on Christmas break; the police were aware that burglaries tend to occur during this time of year; and finally, the rear door to the house was, at the very least, unlocked. However, this argument ignores the contrary inferences a jury could reasonably draw from the facts disputed by plaintiffs. Therefore, based on the information

---

**3.** According to the police procedure in place at the time of this action, the police destroyed the tapes of the call thirty days after the incident.

As a result, there is no information available on the content of the call or on the identity of the caller.

available to the police, summary judgment for defendants would clearly be improper.

According to the *Llaguno* formula, the facts relating to the information available to the police have to be balanced against the exigency before determining whether a jury could reasonably conclude that there was no probable cause to enter the residence. *Llaguno*, 763 F.2d at 1567; *BeVier*, at 127. In *Llaguno*, for example, the police were in hot pursuit of two murder suspects when they entered and searched the home of one of the suspect's relatives based on a minimal amount of information to justify the entry. Yet because of the possibility that the murderers would be alerted to the police presence outside the house, the danger to the police and to the others in the home was especially great. Therefore, we held in *Llaguno* that the plaintiffs were not entitled to a directed verdict on the issue of probable cause. Here the police were acting on a report of a burglary in progress, where there was arguably the possibility that the suspects would flee or perhaps destroy some of the property in the house. Plaintiffs counter by arguing that because the exits to the residence were covered by the police, the situation was sufficiently under control not to require an entry. Presumably plaintiffs mean that the police could have either secured a warrant while the house was guarded or taken other measures besides entering the residence, such as announcing their presence and awaiting a response from those inside. On these facts, a jury could quite reasonably conclude that the police did not have sufficient probable cause to justify entering the residence. That is, the exigency was not sufficiently extreme to compensate for the lack of information available to the police and thus justify a grant of summary judgment. Therefore, in light of the cautionary instruction of *Llaguno*, the issue of probable cause must be left to the jury to decide in this case. *Llaguno*, 763 F.2d at 1565.

## B. *Exigent Circumstances*

■ With respect to the second prong of the *Payton* analysis, that is, whether sufficient exigent circumstances were present to satisfy the exigency exception to the warrant requirement, summary judgment was, however, properly granted for defendants. *Payton*, 445 U.S. at 587–88, 100 S.Ct. at 1380–81; *Paul*, at 647. In *Llaguno*, this Court rejected the "checklist-type analysis" set out in *Dorman v. United States*, 435 F.2d 385, 393–94 (D.C.Cir. 1970) (en banc), for measuring the extent of the exigency in favor of an approach which simply measures the "reasonableness" of the police response in deciding not to secure a warrant. *Llaguno*, 763 F.2d at 1564; *see also United States v. Acevedo*, 627 F.2d 68, 70 (7th Cir.), *certiorari denied*, 449 U.S. 1021, 101 S.Ct. 587, 66 L.Ed.2d 482 (1980). Thus the test is now generally stated as: "were the police unreasonable in not getting a warrant in the circumstances that confronted them?" *Llaguno*, 763 F.2d at 1564. Where, as here, the police are called upon to respond to a crime reported to be in progress, we recognize that the police judgments should be afforded an extra degree of deference.[4] *See, e.g., United States v. Singer*, 687 F.2d 1135, 1144 (8th Cir.1982), *affirmed in relevant part*, 710 F.2d 431 (1983) (en banc); *United States v. Estese*, 479 F.2d 1273 (6th Cir.1973); *cf. United States v. Morgan*, 743 F.2d 1158, 1163 (6th Cir.1984), *certiorari denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985); *United States v. Houle*, 603 F.2d 1297, 1300 (8th Cir.1979).

Thus defendants' conclusions regarding certain disputed evidence at the scene of the incident, which plaintiffs argue should have mitigated a finding of exigency, are judged in light of this standard and the other circumstances that confronted them.

---

**4.** *See generally,* 2 W. LaFave *Search and Seizure* § 6.1(c). As the commentator states: "when the occasion for arrest arises while the police are already out in the field investigating the prior or ongoing conduct which is the basis for the ar-rest, there should be a far greater reluctance to fault the police for not having an arrest warrant. Here, the presumption should be in favor of a warrantless arrest rather than against it...." *Id.* at 392.

Defendants were faced with a call reporting a burglary in progress during a time of year when the students were on break and burglaries were known to occur more frequently. And when they arrived they found a single car in the driveway and the door to the residence unlocked. Therefore, despite the possible existence of certain mitigating considerations raised in our discussion of probable cause, we conclude based on these facts that the exigency requirement was satisfied as a matter of law.

### III

### *Qualified Immunity*

■ Defendants assert that even if the requirements of *Llaguno* were not met, they are nonetheless entitled to qualified immunity. The standard of immunity relating to the question of probable cause was recently announced by the Supreme Court in *Malley v. Briggs,* —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The courts are called upon to determine if "officers of reasonable competence could disagree" as to whether the actions of the police were reasonable. *Id.* 106 S.Ct. at 1096; *see also BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986). As stated in our analysis of probable cause, it is clear that defendants' conclusions with respect to the existence of probable cause could be found to be objectively unreasonable when the facts are viewed in the light most favorable to the plaintiffs. Therefore defendants are not entitled to qualified immunity at this stage of the proceedings.

### IV

For the foregoing reasons, the grant of summary judgment for defendants is reversed in part and the cause is remanded for a determination of probable cause.