**KAYSER FORD, INC., a Wisconsin corporation, Fox Valley Ford–Nissan, Inc., a/k/a Yakim Ford, and Gleue Ford Lincoln–Mercury, Inc., a Wisconsin corporation, Plaintiffs,**

v.

**NORTHERN REBUILDERS, INC., a foreign corporation, Defendant.**

No. 90–C–747–S.

United States District Court, W.D. Wisconsin.

March 21, 1991.

Howard S. Goldman, Tomlinson, Gillman, Travers & Gregg, Madison, Wis., for plaintiffs.

Winston A. Ostrow, Godfrey & Kahn, Green Bay, Wis., for defendant.

## ORDER

SHABAZ, District Judge.

Defendant Northern Rebuilders, Inc. (Northern) moves for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure against the plaintiffs, Kayser Ford, Inc. (Kayser), Fox Valley Ford–Nissan, Inc. (Yakim) and Gleue Ford–Lincoln–Mercury, Inc. (Gleue). This Court has jurisdiction based upon 28 U.S.C. § 1332. Defendant's motion for summary judgment is granted.

## INTRODUCTION

The only issue is whether it is appropriate to determine the existence of a dealership by examining the effect the agreement has on a division of the corporate entity. The pertinent inquiry is whether the community of interest requirement of the Wisconsin Fair Dealership Law (WFDL) can be fulfilled if a division of the corporate entity evidences a "continuing financial interest" and interdependence in the alleged dealership relationship but the corporate entity itself does not evidence a "continuing financial interest" and interdependence in the relationship between the entity and the grantor. There are no material facts in dispute. The issue which must be resolved is one of law. Thus, resolution by summary judgment is entirely appropriate.

When examining the criteria to establish a "community of interest" and thereby a "dealership" for purposes of the WFDL, it is not appropriate to merely examine one division of the contracting corporate entity. Accordingly, those facts which are pertinent to resolution of the motion are those facts which relate to the plaintiffs' entire business and not just the "parts division" of Kayser, Yakim and Gleue.

## FACTS

For purposes of this motion the following facts are found to exist without dispute. Disputed issues have been resolved in favor of the plaintiffs consistent with the principles of law guiding summary judgment procedure.

Defendant Northern is an authorized remanufacturer of Ford motor vehicle parts. Plaintiffs at all relevant times were distributors of defendant's parts. Defendant and each plaintiff entered into an oral agreement whereby the plaintiffs, as distributors, received a discount from the established wholesale prices of defendant's products and which permitted them to distribute the defendant's products to various motor vehicle dealers.

Plaintiff Kayser divides its business operations into five categories: sales of new motor vehicles, sales of used motor vehicles, sales of motor vehicle parts, servicing of motor vehicles and lease of motor vehicles. Revenues received by Kayser Ford for the sale of the defendant's products pursuant to the alleged dealership constitute less than 2 percent of Kayser's gross receipts. The inventory supplied by defendant to Kayser is less than 2 percent of Kayser's total inventory. Kayser's investment in defendant's products is 1.8 percent of Kayser's total assets. The investment includes a delivery truck which is not used exclusively for delivery of the defendant's products and approximately $9,990 in shelving. The truck has a Ford remanufactured parts logo on its exterior. Kayser employs 233 employees. Only one employee devotes full-time employment to the distribution of defendant's products. Nine other employees devote part-time effort to work associated with defendant's products. Kayser does not advertise the defendant's products.

Yakim categorizes its business operations into five categories: new car sales, used car sales, service, parts and body. Yakim's receipts from the sale of products purchased from the defendant constitute less than 3 percent of Yakim Ford's total annual gross receipts. Yakim's inventory of products manufactured by the defendant constitutes less than 4 percent of Yakim's total inventory. Yakim's further investment in defendant's products is a delivery vehicle, shelving, a motor hoist and a van motor hoist. Yakim has one full time employee whose time is spent in the distribution of defendant's products and three employees who expend some part time efforts to the endeavor.

Plaintiff Gleue categorizes its operations as: sales of new vehicles, sales of used vehicles, sales of parts, sales of repairs and service, sales of body shop repairs and F & I commissions. Gleue received less than 8 percent of its gross revenues from the sale of products supplied by the defendant. Gleue's investment to the defendant's products consists of one truck, storage bins and a computer. The computer is not used solely for the distribution of defendant's products. Gleue's total investment, including inventory concerning the defendant's products, is approximately 5.38 percent. Gleue has one employee who devotes full time efforts to defendant's products. Three other employees devote part-time efforts to defendant's products. Gleue does not advertise defendant's products.

The defendant's products constitute a significant percentage of the revenue derived from the sale of parts. For example, in 1989, each plaintiff attributes the following percentages of the gross receipts of the sale of parts to the sale of defendant's parts: Kayser–11 percent, Yakim–34 percent and Gleue–48 percent.

On approximately April 17, 1990, defendant sent to each plaintiff a letter that effective October 1, 1990, defendant intended to terminate the distributorship relationship. Plaintiffs contend that the relationship constitutes a dealership pursuant to the WFDL and, accordingly, said relationship cannot be terminated absent a showing of good cause.

## MEMORANDUM

Summary judgment shall be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Pursuant to Rule 56 the moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Subsequently, the court should

review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the nonmoving party. *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987).

The provisions of the WFDL are set forth in Wisconsin Statute § 135 *et seq.* The central purpose of the WFDL is "[t]o protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships." Wisconsin Statute § 135.025(2)(b). Various criteria must be met in order for a dealership to exist in accordance with the purpose of the law. Said criteria are described in Wisconsin Statute § 135.02(3). This section provides:

(3) "Dealership" means a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

The parties are in agreement that an oral contract exists between plaintiffs and defendant which gives plaintiffs the right to sell defendant's products. Accordingly, whether or not a "community of interest" exists between the alleged grantor defendant (Northern) and the alleged dealers (plaintiffs) is the only factor which must be examined. As previously noted, whether a "community of interest" exists depends upon whether or not this requirement is analyzed by examining the "parts division" of each plaintiff corporation or whether the plaintiff corporations are examined as complete entities regardless of the various internal divisions, i.e., parts, service, sales.

"Community of interest" is defined as: "[A] continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services." Wisconsin Statute § 135.02(1). The Wisconsin Supreme Court has viewed the community of interest factor as requiring a substantial financial investment and some degree of cooperation, coordination of activities and sharing of goals between grantor and grantee. *See Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis.2d 593, 407 N.W.2d 873 (1987) and *Bush v. National School Studios*, 139 Wis.2d 635, 407 N.W.2d 883 (1987).

■ A court should begin its inquiry by examining the two guiding principles, namely whether there is a significant financial interest between the parties and whether the two parties have shared goals and coordinated efforts in a significant proportion. *See Ziegler*, 139 Wis.2d at 604–05, 407 N.W.2d 873. In addition the *Ziegler* court suggested that the entire relationship should be examined by inquiring as to:

1. The length of the parties relationship.
2. The extent and nature of the obligations imposed by the parties' contract or agreement.
3. The percentage of time or revenue the grantee devotes to the grantor's products or services.
4. The percentage of the grantee's gross proceeds or profits that the grantee derives from the grantor's products or services.
5. The extent and nature of the grantor's grant of territory to the grantee.
6. The extent and nature of the grantor's uses of the grantor's commercial symbols.
7. The extent and nature of the grantee's financial investment in the inventory, facilities, or goodwill of the alleged dealership.
8. The personnel devoted to the alleged dealership by the grantee.
9. The extent of the grantee's expenditures on advertising or promotion for the grantor's products or services.
10. The extent and nature of any supplementary services provided by the grantee to consumers of the grantor's products or services.

After examining the language of the WFDL, this Court is of the opinion that the *Ziegler* criteria must be applied to the relationship between the plaintiffs and defen-

dant and not just between the plaintiffs' "parts division" and defendant.

The WFDL requires a contract or agreement between 2 or more persons which gives to a person a right to sell or distribute goods. "Person" is defined as a natural person, partnership, joint venture, corporation or other entity. *See* Wisconsin Statute § 135.02(6).

It is undisputed that the contract to distribute defendant's goods was entered into between the plaintiffs and defendant and that the plaintiffs entered into the agreement in their corporate capacity. There is no evidence to support that the "person" who was given the right to distribute was the "parts division" of each plaintiff's corporate entity. In addition, a division of a corporation is not a legal entity and therefore cannot meet the definition of "person" pursuant to the WFDL. Any dealership that exists does so between the plaintiffs as a corporation and defendant and not the plaintiffs' "parts divisions" and the defendant. Accordingly, whether the "community of interest" element exists depends on the extent of financial interest and interdependence that each plaintiff corporation has concerning the defendant's products.

The view that it is proper to examine the entire corporation rather than a part of the corporation is supported by several factors. First, as previously noted, a division of a corporation is not a "person" under the WFDL and accordingly cannot be involved in a dealership arrangement. Second, the status of a person "as a dealer is personal in nature and dependent on the dealing of the parties and their agreement; it is not transferable." *C.L. Thompson, Co. Inc. v. Festo Corp.*, 708 F.Supp. 221, 225 (E.D. Wis.1989). Here, all of the dealings were between plaintiffs and the defendant. There are absolutely no facts to support that the dealer in the relationship was the "parts division" of the three corporate entities. In fact, the plaintiffs have failed to set forth any facts which support their position that the parts division was an independent operating division. Instead, the facts support that the "parts division" was just one of several departments providing services in the car industry within a plaintiff corporation.

Prior decisions have referred to a grantor's termination of a distributorship and whether it should be viewed in terms of its effect on the entity or on a part of the entity. The Seventh Circuit Court of Appeals rejected a dealership between a liquor store and a Jose Cuervo tequila supplier because the loss of one brand of liquor did not substantially affect the liquor store. *See Kenosha Liquor Co. v. Heublein, Inc.*, 895 F.2d 418 (7th Cir.1990).

> We have deduced from the structure and history of the statute a central function: preventing suppliers from behaving opportunistically once franchisees or other dealers have sunk substantial resources into tailoring their business around, and promoting, a brand. This implies that unless a large portion of the business is committed to a supplier, or the reseller has substantial assets specialized to that supplier's goods, there is no opportunity to exploit by changing the terms in midstream, no terms other than those applied to all middlemen, hence no "community of interest", and so no statutory "dealership."

*Id.* at 419 (citations omitted). *See also Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis.2d at 607 n. 9, 407 N.W.2d 873 [rejecting argument concerning separate markets for products as the basis for measuring percentage of revenue.]

These plaintiffs are motor vehicle businesses providing various services from the sale of new and used cars to the sale of remanufactured parts. The plaintiffs have not "sunk substantial resources" into tailoring their businesses around the sale of remanufactured parts.

While the Court agrees that creating internal divisions by brand of liquor is an extreme example of interpreting the WFDL, to allow this same type of "carving up" as it concerns plaintiffs' businesses is the type of situation which subverts the purposes and goals of the WFDL. Allowing the "community of interest" requirement to be fulfilled by examining a division of a company when there are no facts supporting this division as a "person" within the meaning of the WFDL is not logical and renders the WFDL meaningless. Accordingly, as a matter of law it is improper

to determine whether a "community of interest" exists by examining the effect the termination has on the "parts division" of the plaintiff corporations. Rather, the *Ziegler* criteria will be examined in light of the complete corporate entity.

■ It is undisputed that the plaintiffs do not advertise the defendant's remanufactured parts and each devotes but one full time employee to defendant's goods. Investment in terms of inventory, facilities and goodwill is *de minimis*. It is also undisputed that the percentage of inventory attributed to defendant's products for Kayser, Yakim and Gleue is 2 percent, 4 percent and 5.4 percent, respectively. Each plaintiff has one truck which displays the *Ford* remanufactured parts logo (there is no evidence that this includes Northern Rebuilders' name). Each plaintiff has invested in some shelving space and some equipment to aid in the distribution of defendant's products. The equipment, a computer, is not used solely for the efforts undertaken for defendant's products.

Finally, it is undisputed that the sale of defendant's products constitutes less than 2 percent, less than 3 percent and less than 8 percent of the gross receipts for Kayser, Yakim and Gleue, respectively. "A low percentage of sales is strong evidence, evidence that might ultimately be determinative in many cases, that there is no continuing financial interest between the parties in the operation of the business and thus no community of interest." *Ziegler* at 139 Wis.2d at 607, 407 N.W.2d 873.

This evidence along with the *de minimis* amount of inventory, facilities, and personnel devoted to the distribution of defendant's products requires a conclusion that there is not a significant financial interest between the parties nor a significant number of shared goals and coordinated efforts to constitute a "dealership." Assuming that termination of this agreement were to cause each plaintiff to close the "parts division" of each operation, this loss does not evidence a "community of interest." For example, while a loss of the "parts division" of Gleue would be inconvenient and would cause Gleue a profit loss of 8 percent, Gleue would continue to function in the motor vehicle business in such

areas as the sale of new and used vehicles, repairs and service. Any loss incurred does not evidence a "significant economic impact" on the alleged dealer. *Ziegler*, 139 Wis.2d at 605, 407 N.W.2d 873. Nor do the facts exhibit that Gleue or any other plaintiff is dependent upon the relationship with defendant for its "economic livelihood." *Bush*, 139 Wis.2d at 651, 407 N.W.2d 883.

Because of the resolution of this issue in defendant's favor it is unnecessary to address those arguments concerning the relationship between Wisconsin Statutes §§ 135.07 and 218.01.

### ORDER

IT IS ORDERED that defendant's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment is entered in favor of defendant Northern Rebuilders, Inc. against the plaintiffs Kayser Ford, Inc., Fox Valley Ford–Nissan, Inc., and Gleue Ford Lincoln–Mercury, Inc., DISMISSING plaintiffs' complaint and all claims contained therein with prejudice and costs, and that the parties' motion to extend discovery deadline is DENIED as moot.