Susie **HEBRON**, Plaintiff–Appellant,

v.

Catherine **TOUHY** and Albert **Parks**, Defendants–Appellees.

No. 92–4037.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1994.

Decided March 7, 1994.

Order Denying Rehearing March 28, 1994.

Alan D. Lyons, Armand L. Andry (argued), Oak Park, IL, for plaintiff-appellant.

Lawrence Rosenthal, Deputy County Counsel, Frederick S. Rhine, Asst. County Counsel (argued), Benna R. Solomon, Susan S. Sher, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Catherine Touhy and Albert Parks, patrol officers of the Chicago police, were dispatched to investigate a landlord-tenant dispute in July 1986. The tenants asserted that their landlords, the Hebrons, who were trying to evict them for non-payment of rent, had cut off their water and were refusing to permit them to use or remove their washer-dryer in the basement. Parks went to the apartment on the second floor; no water came out of the tap. Parks and Touhy then knocked on the Hebrons' first-floor door. Susie Hebron, 65 years old and toting a butcher knife, admitted the officers. After some discussion, Hebron put the knife down but otherwise was uncooperative. She denied that the tenants' water had been cut off but would not visit their apartment with the officers to check. She admitted that she would not allow the tenants to enter the basement where their washer-dryer was located. Everything relating to the tenants was her husband's responsibility, Hebron contended, but she conceded that she was a part owner of the building and refused to call her husband at work. Hebron also refused to call her lawyer. After the tenants signed formal complaints, the officers placed Hebron under arrest for depriving the tenants of utility services and their washer-dryer. She did not go quietly. First she sank her teeth into Touhy's torso; after three blows from the heel of Touhy's hand caused Hebron to release her grip, she bit into Touhy's forearm; two more blows followed, and Touhy grabbed Hebron by the hair to prevent further bites. Hebron refused to walk and had to be dragged to a paddy wagon. She posted a $100 bond and was released. After the prosecutor dismissed the criminal charges against her, Hebron sued the officers under 42 U.S.C. § 1983 for false arrest and the use of excessive force in effecting the arrest.

In April 1988 the district judge granted summary judgment to the defendants on Hebron's claim that she had been arrested without probable cause. The tenants' complaint plus the officers' investigation, the judge concluded, supplied the necessary justification; Hebron's denial did not detract from the existence of probable cause to arrest. Four and a half years later, a jury determined that the officers had not used excessive force when arresting Hebron. (The lengthy intermission is a mystery.) Hebron now contends that the probable-cause question should have been submitted to the jury and that procedural defects entitle her to another trial.

■ Before they arrested Hebron, the police received complaints from two persons (the tenants) who depicted themselves as victims of crimes. Such reports ordinarily establish probable cause. *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir.1986). Sometimes information from or about a person claiming to be the victim of crime would lead

a reasonable officer to be suspicious, making further investigation prudent—and, because the "reasonableness" standard of the fourth amendment links the constitutional obligation to the standard of prudent conduct, the officer must do more. *Reardon v. Wroan*, 811 F.2d 1025 (7th Cir.1987); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1344–47 (7th Cir.1985). Parks and Touhy knew that the tenants were being evicted, and the significant chance that they bore a grudge against their landlords would have made it unreasonable—and therefore unconstitutional—to arrest the landlords on the tenants' mere say-so. Having received a report of questionable reliability, the police needed to investigate. *Illinois v. Gates*, 462 U.S. 213, 227, 103 S.Ct. 2317, 2326, 76 L.Ed.2d 527 (1983). Which they did. Parks visited the tenants' apartment on the second floor and learned that they had no hot water, just as they said. (Whether Parks found no running water, or just no hot water, is a subject on which the evidence conflicts; the disagreement is not material.) Both officers visited Hebron on the first floor and found her water on; she insisted that the tenants received the same water she did, which was not true. Hebron admitted that she would not give the tenants access to their washer-dryer but denied wanting to deprive them of the machine permanently. Yet the tenants, who said that Hebron had told them that they could *never* retrieve their washer-dryer (a form of self-help by landlords frustrated by their inability to collect the rent?), had been proved right about the water, while Hebron's statements about the water were suspect, and she was unwilling to cooperate in further investigation. There may be ways of reconciling the stories. During the litigation Hebron asserted that, when children opened fire hydrants in the neighborhood, pressure sometimes was inadequate to supply tap water on the second floor; but she did not tell the police this, there is no evidence that fire hydrants were open on the date in question, and the tenants said that their water had been off for days. The police conducted a responsible investigation and accumulated enough evidence to support an arrest. Although Hebron and her husband later denied many of the allegations, probable cause depends on information known to the police at the time, not on how things turn out. *Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

What is more, throughout this litigation Hebron has conceded that she denied the tenants access to their property. An affidavit filed in January 1988 states: "I did not let the [tenants] into the basement because I did not know their intentions after they knew they were being evicted but if they had wanted to move thier [sic] washer and dryer I would have gladly let them do so. I only wanted to protect my property which was also located in the basement." In other words, Hebron admitted to the act the tenants alleged (denying them access to their machine) but denied that she had a criminal intent to keep their property permanently. Police have a hard time evaluating competing claims about motive; they are entitled to act on the basis of observable events and let courts resolve conflicts about mental states. Summary judgment in the officers' favor was appropriate. Whether defendants would have had such an easy time if Hebron had invoked the warrant clause of the fourth amendment, see *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), is a question we need not pursue. Until filing her reply brief in this court—which is too late—Hebron was content to argue the lack of probable cause, and the district judge correctly decided the issues presented to him.

■ Only one of Hebron's complaints about the conduct of the trial requires discussion. The judge instructed the jury that Hebron needed to establish that force grossly disproportionate to the cause, and inspired by malice, had produced severe injury. The instruction was drawn from language in *Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir.1985), a case that we have overruled in favor of an objective reasonableness standard. See *Lester v. Chicago*, 830 F.2d 706 (7th Cir.1987). In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court took the side of *Lester*. See also *Titran v. Ackman*, 893 F.2d

145 (7th Cir.1990). Because *Lester* and *Graham* applied their approach to the litigants in those cases, the new rule is fully retroactive. *Harper v. Virginia Department of Taxation,* — U.S. —, — – —, 113 S.Ct. 2510, 2516–18, 125 L.Ed.2d 74 (1993); *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, — – —, 111 S.Ct. 2439, 2442–45, 115 L.Ed.2d 481 (1991). An instruction based on *Gumz* should not have been given at a trial in 1992. *Gumz* retains force for events predating *Lester* in the sense that public officials are entitled to qualified immunity for conduct that passed muster under *Gumz.* See *Chathas v. Smith,* 884 F.2d 980, 989 (7th Cir. 1989). But qualified immunity presents a question of law for the court. *Elder v. Holloway,* — U.S. —, —, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994); *Warlick v. Cross,* 969 F.2d 303, 305 (7th Cir.1992); cf. *Nelson v. Streeter,* 16 F.3d 145, 149 (7th Cir.1994). Juries should be instructed to apply the correct body of substantive law, and this jury was not.

■ Nonetheless, a court of appeals may not treat jury instructions in civil litigation as plain error. *Deppe v. Tripp,* 863 F.2d 1356, 1361–62 (7th Cir.1988). See also *Bogan v. Stroud,* 958 F.2d 180, 182–84 (7th Cir.1992); *Rakovich v. Wade,* 850 F.2d 1180, 1203 (7th Cir.1988) (en banc); *Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1295 (7th Cir.1987). "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. Hebron proposed an instruction based on *Lester* and *Graham;* we may assume that this proposal served as an "objection" to the *Gumz* instruction the defendants tendered. Compare *Exxon Corp. v. Exxene Corp.,* 696 F.2d 544, 549 (7th Cir.1982), with *Bogan,* 958 F.2d at 183–84. What Hebron did not do is state the *grounds* for giving one instruction rather than another. Rule 51 requires the parties to alert the judge to their reasons, so that the court may resolve legal disputes with full information and avoid all errors that are avoidable. Hebron did not cite *Graham,* did not discuss the law of retroactivity (which had been transformed by *Beam Distilling* the year before), in sum, did not furnish the district judge with the tools of decision.

At oral argument the reasons for the omission came into focus. The district judge told opposing counsel to confer. He wanted them to produce an agreed set of jury instructions. When they could not agree, he sent them off to parley repeatedly. During these discussions, the two lawyers debated the significance of *Gumz, Lester,* and principles of retroactivity. They never did achieve consensus, and the district judge then chose the defendants' preferred instruction. Defendants' lawyer told the court why, in his view, a *Gumz* instruction was appropriate; Hebron's lawyer did not reply. He apparently believed (and, to judge from the oral argument, still believes) that having made the basis of his position clear *to his adversary,* he had done all the rule requires. Not so. When the litigants disagree, the judge decides; Rule 51 requires the lawyers to make their arguments in court, so that the judicial decision may be well informed and the instructions may conform to the law. Had the district judge been reminded of *Graham* and *Beam Distilling,* and the fact that immunity is a question for the judge rather than the jury, he would not have given an instruction based on *Gumz,* and the first jury could have decided the case fully informed about the applicable law. Having omitted an obligatory step that would have averted the error, Hebron is not entitled to another trial.

AFFIRMED.

## ORDER

March 28, 1994.

Plaintiff–Appellant filed a petition for rehearing on March 18, 1994. This petition contends that plaintiff made a proper objection to the *Gumz* instruction and briefly stated reasons in open court. The case was briefed and argued on the contrary supposition: that although plaintiff offered a *Lester* instruction, she did not object to the *Gumz* instruction. The argument in the petition for rehearing comes too late and has been waived. All of the judges on the panel have

voted to deny rehearing, and the petition is therefore DENIED.