Dianna L. BIBART, Plaintiff,

v.

Jay R. STACHOWIAK, Michael W. Mahar, Douglas J. Pastirik, Anthony M. Condie, LaSalle County Sheriff's Department and the County of LaSalle, Defendants.

No. 94 C 3037.

United States District Court,
N.D. Illinois,
Eastern Division.

April 27, 1995.

Kenneth A. Kozel, Petz & Kozel, LaSalle, IL, for plaintiff.

Fred B. Moore, Livingston, Barger, Brandt & Schroeder, Bloomington, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Dianna Bibart brings this ten-count complaint alleging violations of her Fourth, Eighth, and Fourteenth Amendment rights. Presently before the court is defendants' motion for summary judgment. For the reasons set forth below, defendants' motion is granted in part and denied in part.

### I. Background

At approximately midnight on May 18, 1993, defendant Jay Stachowiak, a deputy of the LaSalle County Sheriff's Department, stopped Dianna Bibart for various traffic violations.[1] Bibart identified herself and gave Stachowiak her date of birth, but stated that she did not have her driver's license. Stachowiak radioed plaintiff's name and date of birth to the dispatcher at the Sheriff's Department, Douglas Pastirik. Pastirik ran plaintiff's name (Dianna Bibart), and informed Stachowiak that he had a "hit," *i.e.,* that there was a warrant outstanding on Bibart.[2] As it turned out, however, the out-

---

1. These violations included a missing headlight and missing license plate lights.

2. Bibart suggests that Pastirik testified at his deposition that he was not sure whether Stachowiak gave him Dianna's name to run, or that of her sister, Darlene. However, Pastirik explicitly testified that Stachowiak told him to run Dianna through the computer, and that that is the name he ran. *See* Pl.'s Ex. 4, at p. 23–24.

standing warrant was for Dianna's sister, Darlene, who has the same date of birth as Dianna. The computer system employed by the sheriff's department emits a sound indicating an outstanding warrant based not only upon the exact name of the person entered into the computer, but also based upon phonetic equivalents and dates of birth. As a result, when Pastirik entered Dianna's name and date of birth, the computer sounded. The computer indicated, however, that there were no warrants outstanding for *Dianna* Bibart, but that there was a warrant for *Darlene* Bibart. Pastirik failed to note the distinction, and therefore informed Stachowiak that he had received a "hit" on Bibart, referring to the name Stachowiak had given him, *i.e.*, Dianna Bibart. Based upon this information, and despite Dianna's protests that the warrant was for her sister, Stachowiak placed Dianna under arrest and handcuffed her. He transferred custody to defendant Michael Mahar, a sergeant with the LaSalle County Sheriff's Department, who brought her to the LaSalle County Jail. She was subjected to a pat-down search and placed in a secured area of the jail. Based upon Dianna's assertions that the warrant was for her sister, and that she had been arrested in error, Mahar reviewed the information in the dispatcher's office. He realized that the warrant was for Darlene Bibart, and therefore arranged for her release. Although Bibart asserts that it felt as though she were held for three or four hours, Mahar asserts that she was at the jail for approximately thirty minutes.

## II. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and .... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

## III. Discussion

### A. Individual Capacity Claims

Defendants first assert that Bibart has failed to adequately allege a violation of the Fourth Amendment, which protects people against "unreasonable searches and seizures." U.S. Const. amend. IV.[3] As it is undisputed that Bibart was "seized" within the meaning of the Fourth Amendment, the only issue is whether that seizure was reasonable. This inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Furthermore, this inquiry is not made on an officer-by-officer basis; the Seventh Circuit has held that consideration of "[w]hether the arrest is lawful depends on the information available to the police collectively...." *Gordon v. Degelmann*, 29 F.3d 295, 300 (7th Cir.1994). In light of these standards, it is apparent that defendants assertion that no Fourth Amendment violation occurred is empty. The information available to the police indicated that there were no outstanding warrants for Dianna Bibart.

Furthermore, that testimony is consistent with the affidavit Pastirik submitted in connection with the motion for summary judgment.

3. Defendants also assert that, because Bibart had not been convicted of a crime at the time the events in question occurred, she cannot make out an Eighth Amendment violation. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). Bibart has failed to respond to this argument, and has therefore conceded the issue. *See Swedish American Hosp. v. Midwest Operating Eng. Fringe Benefit Funds.*, 842 F.Supp. 1039, 1043 (N.D.Ill.1993).

Notwithstanding that fact, she was arrested, as defendants concede, without probable cause. Furthermore, Pastirik's intent (or lack thereof) in misreading the computer screen or the accompanying printout is not relevant in determining whether Bibart's Fourth Amendment rights were violated. As the court in *Edwards v. Cabrera*, 861 F.Supp. 664 (N.D.Ill.1994) noted, "[t]he reasonableness analysis has never entailed an examination of the officer's state of mind or intent." *Id.* at 670. *See also Specht v. Jensen*, 832 F.2d 1516, 1522 (10th Cir.1987) ("[T]he Court has never implied that the existence of a [Fourth Amendment] violation hinges upon the official's mental state."), *rev'd on other grounds*, 853 F.2d 805 (10th Cir.1988).[4] Accordingly, we reject defendant's contention that no Fourth Amendment violation occurred. *Cf. Maryland v. Garrison*, 480 U.S. 79, 86–88, 107 S.Ct. 1013, 1017–18, 94 L.Ed.2d 72 (1987) (Fourth Amendment violation occurs when officer knows, or should know, that premises searched are not premises described in warrant).[5]

 That is not, however, the end of our inquiry. The officers are still entitled to summary judgment on the individual capacity claims if they can demonstrate that they are protected by qualified immunity. Qualified immunity will shield the officers from suit if "a reasonable officer could have believed [Bibart's arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). With respect to Officers Stachowiak and Mahar, we conclude

that this standard has been met. They were entitled to rely upon Pastirik's representation that an arrest warrant had been issued for Dianna Bibart, notwithstanding her assertions of mistaken identity. *See, e.g., Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) (holding that "[a] policeman ... is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending investigation" in the face of otherwise sufficient information). As the Seventh Circuit has noted, albeit in dicta, "[f]ear of personal liability if the bulletin or poster turns out to be erroneous would interfere with valuable institutions of law enforcement." *Gordon v. Degelmann*, 29 F.3d 295, 300 (7th Cir.1994). The Seventh Circuit then suggested that "[g]iving the arresting officer immunity would shift the liability back to the person who issued the erroneous instructions ..., simultaneously protecting all of the interests involved." *Id.* We agree with the reasoning of *Gordon* that arresting officers, like Stachowiak and Mahar, who reasonably rely upon information obtained from another law enforcement official regarding an outstanding arrest warrant are entitled to qualified immunity from suit if it subsequently appears that the information that the arresting officers received was erroneous. Accordingly, we grant defendants' motion for summary judgment on the individual capacity claims against Stachowiak and Mahar.

We cannot, however, reach the same conclusion with respect to Pastirik. The Eighth Circuit recently addressed an analogous situ-

---

**4.** The same is not true in considering claims that an officer violated the due process clause of the Fourteenth Amendment. In *Daniels v. Williams*, 474 U.S. 327, 333–34, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), the Supreme Court concluded that negligence by state officials does not violate the due process clause. However, the *Daniels* court expressly declined to "rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care...." *Id.* at 334, 106 S.Ct. at 666. As a result, the due process cases have "little relevance to a 1983 action involving fourth amendment rights." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir.1988).

**5.** In support of their argument, defendants rely in large part upon *Baker v. McCollan*, 443 U.S.

137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In *Baker*, however, both parties conceded that the initial arrest was proper. The only issue presented was whether the extended detention of an individual arrested pursuant to a valid warrant, who was named in the warrant but ultimately proved to be the wrong individual, violated the due process clause of the Fourteenth Amendment. *Id.* at 143–45, 99 S.Ct. at 2694–95. In the present case, the outstanding warrant did not name Dianna Bibart, and the arrest itself was therefore improper. Accordingly, we find *Baker* inapposite. *See Williams v. City of Chicago*, 525 F.Supp. 85, 87 (N.D.Ill.1981) (finding *Baker* inapplicable to facts similar to those presented here).

ation. In *Dawkins v. Graham,* 50 F.3d 532 (8th Cir.1995), officers obtained a search warrant to search the home at 611 Byrd Street. In executing the warrant, however, they apparently misread either the warrant or their location and broke into the home at 611 Adam Street. The owners of the Adam Street residence brought a lawsuit alleging Fourth Amendment violations. The district court rejected the officers' contention that they were entitled to qualified immunity, and the officers appealed. On appeal, the Eighth Circuit noted that "qualified immunity does not protect plain incompetence." *Id.,* 50 F.3d at 535. *See also Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 1097, 1096, 89 L.Ed.2d 271 (1986)). The Eighth Circuit concluded that the mistaken entry into the Adam Street home may have amounted to plain incompetence, and therefore affirmed the district court's denial of summary judgment.

▪ In the present case, it is undisputed that the computer screen indicated that there were no outstanding warrants for Dianna Bibart, although it listed an outstanding warrant for her sister, Darlene. We cannot conclude as a matter of law that Pastirik's failure to read the screen carefully is the sort of reasonable, but ultimately mistaken, judgment call that qualified immunity is designed to protect. On the contrary, we believe that there exists material questions of fact about whether Pastirik's error amounted to "plain incompetence," and are therefore required to deny his motion for summary judgment.[6]

**B. Official Capacity and Municipality Claims**

▪ Bibart has also sued each of the named defendants in their official capacities, as well as the County of LaSalle and the LaSalle County Sheriff's Department. Official capacity suits operate as suits against the government itself. *Monell v. Department of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Accordingly, Bibart must demonstrate that she suffered a constitutional wrong as the result of an official policy, custom, or practice. *See id.; Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1978). She attempts to make this showing in two ways. First, Bibart asserts that defendant Mahar was the shift supervisor at the time he took custody of her, and that his actions warrant a finding of official policy. She maintains that even a single decision by a "ranking official" is sufficient to establish municipal liability, and cites *Pembaur* in support. While we acknowledge that *Pembaur* allows for a finding of official policy based on the single act of a policymaking official, *see Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298–99, those facts are not before us. That is, the decision of a "ranking official" does not constitute a policy of the municipality, unless the official has final policy-making authority. Indeed, the *Pembaur* Court stated:

> [W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decision-maker possess final authority to establish municipal policy with respect to the action ordered.

*Id.* at 481, 106 S.Ct. at 1299. Bibart has not even alleged, much less shown, that Mahar possessed final authority to establish the "policy" at issue here.[7] Accordingly, Bibart's arguments based upon Mahar's involvement must fail.

▪ Bibart also seeks to establish municipal liability based upon prior similar incidents. *See City of Canton v. Harris,* 489 U.S. 378, 390 n. 10, 109 S.Ct. 1197, 1205 n. 10, 103 L.Ed.2d 412 (1989) ("It could also be that

---

**6.** Defendants have moved to strike various materials submitted in connection with Bibart's response to defendants' motion for summary judgment. Because we have not relied upon the objectionable materials in ruling on the relevant portions of defendants' motion for summary

judgment, defendants' motion to strike is denied as moot.

**7.** On the contrary, Mahar was simply the senior ranking officer on the midnight to 8:00 a.m. shift.

the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need."). In support, Bibart relies upon the deposition testimony of Tina Reynolds, who has been a deputy with the LaSalle County Sheriff's Department since 1975. In her deposition, Reynolds stated that, since she had been employed, there had been "several" individuals brought in to the jail "[f]or proper identification," who ultimately proved to be the "wrong person." Bibart asserts that this statement is sufficient to establish a jury question as to the existence of a municipal policy. We disagree.

Reynolds' testimony is, at best, ambiguous as to the circumstances of the other arrests. She stated that, on occasion, the wrong person was arrested, apparently pursuant to a warrant intended for someone else. She added that those arrests were made for identification purposes. As the Court made clear in *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), however, "[t]he Constitution does not guarantee that only the guilty will be arrested," and that, under certain circumstances, arresting the "wrong person," *i.e.,* a person other than the individual actually sought in the warrant, does not violate the Constitution. Furthermore, Reynolds testified that she did not know the names of these individuals, the dates of the arrests, the sheriff at the time of the various arrests, or whether there were any records regarding the arrests. In short, Bibart has failed to offer any meaningful evidence that a pattern of the *relevant* unconstitutional conduct (*i.e.,* arresting people based upon the misreading of warrant information) exists. *Cf. Hossman v. Blunk,* 784 F.2d 793, 796 (7th Cir.1986) (plaintiff must demonstrate "*specific* pattern or series of incidents" in support of allegation) (emphasis added). In light of this fact, we must conclude that Bibart has failed to sustain her burden on summary judgment and rebut defendants' assertion that no policy or custom exists.

## IV. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted as to Counts I, II, and IV–X, and denied as to Count III of plaintiff's first amended complaint. Defendants' motion to strike is denied as moot. It is so ordered.