Marshall SPIEGEL, Plaintiff,

v.

CITY OF CHICAGO; Det. Joseph Cortese No. 20868; Det. William Brannigan No. 24; Sgt. Dennis Murphy No. 2167; Sgt. Frank Kajari No. 2116; and Holly Zielke, Department of Aging of the City of Chicago, Defendants.

No. 95 C 3697.

United States District Court,
N.D. Illinois,
Eastern Division.

March 22, 1996.

G. Flint Taylor, Jr., People's Law Offices, Chicago, IL, for plaintiff.

Irene Schild Caminer, Sharon Baldwin, Margaret Ann Carey, Patricia Jo Kendall, James Patrick McCarthy, Alec McAusland, Gregory J. Wojkowski, Yvonne Spradley La Grone, City of Chicago, Law Department Corporation Counsel, and Susan S. Sher, City of Chicago Law Department, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Marshall Spiegel filed suit under 42 U.S.C. § 1983 against the City of Chicago, five Chicago Police Officers and an employee of the Department of Aging of the City of Chicago alleging that they unlawfully charged, arrested and confined him in violation of his Fourth and Fourteenth Amendment rights. The defendants' motions to dismiss are presently before the Court.

### RELEVANT FACTS [1]

On May 29, 1993, Spiegel, along with his wife and son, were in their apartment when they were disturbed by noise emanating from the apartment above. First Amended Complaint, ("Amend.Comp."), ¶ 8. When Spiegel's wife went upstairs to ask their neighbors, Loren Cherny and Mim Bobbin, to stop making the noise, an argument ensued. *Id.,* ¶¶ 9–10. Spiegel heard the argument, went upstairs and joined in the confrontation which escalated to the point where Cherny and Bobbin both shoved Spiegel. *Id.,* ¶¶ 11–12. Spiegel contends that he never made any offensive contact with either Cherny or Bobbin. *Id.,* ¶ 13.

Two days after the incident, on May 31, 1993, Spiegel filed a battery report with the police against Cherny and Bobbin. Id., ¶ 14. On June 23, 1993, plaintiff obtained summons and complaints against Bobbin and Cherny and Cherny was served with a summons and notified of his court date.[2] *Id.* Two days after receiving the summons, Cherny went to the police station, accused Spiegel of battery and demanded Spiegel's arrest. *Id.,* ¶ 16.

Based upon Cherny's charges, defendant Detective Cortese, called Spiegel's home and informed his wife that he had been charged with battery and that Spiegel must either turn himself in or he would be arrested. *Id.,* ¶ 19. Upon learning of the pending charge, Spiegel called Cortese apparently in an effort to straighten the matter out. *Id.,* ¶ 20. Cortese informed the plaintiff that the battery charge was based on the allegations of Cherny and Bobbin that plaintiff kicked Cherny in the leg during their confrontation

---

1. The facts recited here are taken from the plaintiff's allegations in the pleadings, which the Court must take as true for purposes of this motion. *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1992).

2. The Amended Complaint is unclear as to whether Bobbin was either served or arrested.

on May 29, 1993. *Id.* Plaintiff denied kicking Cherny and explained to Cortese that he filed a battery complaint against Cherny several weeks earlier, that he was the one who was shoved during the altercation and that Cherny's allegations were simply retaliatory. *Id.,* ¶ 21.

Spiegel further informed Cortese that the incident arose from a long-standing dispute between the neighbors about noise and that his wife, as well as other independent witnesses, would corroborate his story. *Id.* Spiegel also requested at this time that he be served with a summons and complaint as Cherny was rather than being arrested. *Id.* After talking with Cortese, Spiegel spoke with defendant Sergeant Kajari and apprised him of the same information. *Id.,* ¶ 22. No further investigation was conducted after his telephone conversations with Cortese and Kajari. *Id.,* ¶ 23. Spiegel turned himself in later that day and was processed at the police station and placed in a cell for about an hour before being bonded out. *Id.,* ¶¶ 24–25.

## LEGAL STANDARDS

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assoc. Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). When considering a motion to dismiss, the Court views all facts alleged in the complaint—as well as any inferences reasonably drawn therefrom—in the light most favorable to the plaintiff. *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir. 1992). A motion to dismiss will be denied unless it appears beyond doubt that the plaintiff can prove no facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

## ANALYSIS

*Wrongful Arrest Claim*

Spiegel seeks compensatory and punitive damages for injuries he alleges he suffered based on his wrongful arrest at the hands of five Chicago Police Officers and an employee of Chicago's Department of Aging. According to Spiegel, the police lacked probable cause to arrest him because they failed to conduct a sufficient investigation into the facts supporting his arrest.

*Qualified Immunity*

The defendants' motions to dismiss require this Court to resolve the issues of qualified immunity which exist in this case. Courts have been admonished to resolve qualified immunity issues at the earliest possible stage of litigation. *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1981). Qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To apply this standard, we determine whether the right allegedly violated was clearly established when the challenged conduct occurred, and then evaluate the legal reasonableness of the defendants' conduct. *Biddle v. Martin,* 992 F.2d 673, 675 (7th Cir.1993).

When a warrantless arrest is the subject of a § 1983 action, the defendant officer is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest" the plaintiff. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). Probable cause exists when the police have facts and circumstances within their knowledge based upon reasonably trustworthy information that those facts and circumstances are sufficient to allow a prudent person to believe that the suspect has committed or was committing an offense. *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1246 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 937, 130 L.Ed.2d 882 (1995). Probable cause is a nontechnical concept which seeks to accommodate the interests of effective law enforcement, on the one hand, versus the privacy and liberty interests possessed by citizens who follow the law. The police, in determining whether probable cause exists, must as-

sess probabilities in specific factual scenarios, and such assessment is not conducive to precise legal rules. *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). "In recognition of the endless scenarios confronting police officers in their daily regimen, courts evaluate probable cause 'not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard.'" *Sheik–Abdi,* 37 F.3d at 1246, citing, *Mahoney v. Kesery,* 976 F.2d 1054, 1057 (7th Cir.1992), citing, *Richardson v. Bonds,* 860 F.2d 1427, 1431 (7th Cir.1988).

 The probable cause objective standard does not imply that "an officer risks his career and his fortune by believing an apparently sober eyewitness to a crime." *Gramenos v. Jewel Cos., Inc.,* 797 F.2d 432, 439 (7th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter,* 502 U.S. at 227, 112 S.Ct. at 536, citing *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40. The test of qualified immunity for police officers is whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff in light of clearly established law and the information the arresting officers possessed. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40. Therefore, applying these principles to the instant case, we must examine each defendant officer's conduct in light of his specific knowledge of the facts from the perspective of a reasonable officer.

*Claims Against Defendant Officers Hennelly, Brannigan and Murphy*

 The standard for qualified immunity protection with respect to defendants Hennelly, Brannigan and Murphy has been met and we find that they are protected. Although it is unclear from the pleadings, the Court infers that these officers are included in this suit as either the arresting officers or processing personnel. Officers carrying out arrest orders are entitled to

rely on that order being based upon sufficient probable cause. *Gordon v. Degelmann,* 29 F.3d 295, 300 (7th Cir.1994); see also *Bibart v. Stachowiak,* 888 F.Supp. 864, 867 (N.D.Ill.1995). Fear of personal liability if the arrest warrant later turns out to be invalid would "interfere with valuable institutions of law enforcement." *Gordon,* 29 F.3d at 300. *Gordon* suggested that granting immunity to the arresting officer would simply place the liability solely upon the person who issued the erroneous instructions which would protect all those involved. *Id.*

 The reasoning advanced in *Gordon* makes good sense. Arresting officers, like the defendants here, who reasonably rely upon information obtained from another law enforcement official regarding an arrest warrant are entitled to qualified immunity should that information later be proved incorrect. *Bibart,* 888 F.Supp. at 867. Accordingly, we grant defendants Hennelly, Brannigan and Murphy's motions to dismiss Count I.

*Claims Against Defendant Officers Cortese and Kajari*

 Normally, "when an officer has 'received his information from some person— normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth,' he has probable cause." *Grimm v. Churchill,* 932 F.2d 674, 675 (7th Cir.1991). Therefore, to defeat the defense of qualified immunity on his wrongful arrest claims against Cortese and Kajari, Spiegel's complaint must demonstrate that the information known to Cortese and Kajari did not constitute reasonably trustworthy information sufficient to lead a prudent officer to conclude that plaintiff committed a battery upon Cherny.

Cortese and Kajari are the officers in this case who appear to have had sufficient exposure to the facts to make a probable cause determination. However, Spiegel's complaint specifies that defendants Cortese and Kajari were also aware of information which undermined Cherney's credibility. Spiegel specifically alleges that he informed Cortese and Kajari that he had an ongoing feud with Cherny and of the prior complaint filed by Spiegel regarding the same incident. Spie-

gel alleges that he told Cortese and Kajari that independent witnesses would corroborate his contention that Cherny was bringing a false and retributive claim. Spiegel contends that based upon Cherny's alleged grudge against him, Cortese and Kajari should have found Cherny's reliability suspect and, therefore, had a duty to further investigate Spiegel's contentions before arresting him.

*A Police Officer's Duty To Conduct Further Investigation*

■■■■ Because probable cause is fact-specific, it follows that the degree of investigation necessary to determine probable cause is completely dependent upon the circumstances of each case. Although defendants are correct in asserting that there is no "constitutional or statutory requirement that before an arrest can be made the police must conduct a trial," *Gramenos*, 797 F.2d at 439, citing *Morrison v. United States*, 491 F.2d 344, 346 (8th Cir.1974), a police officer's duty to investigate until a reasonable belief can be formed that a crime has been committed is clearly established. Because the "reasonableness" standard of the fourth amendment links the constitutional obligation to prudent conduct, when information an officer receives warrants further investigation a prudent officer must do more to determine probable cause. *Hebron v. Touhy*, 18 F.3d 421, 422–23 (7th Cir.1994).

The duty to investigate and look behind an officer's reliance on the veracity of a victim or witness has been clearly established in this circuit since at least 1994. In *Hebron* tenants complained to police that their landlords had cut off their water and refused to allow them to use their washer-dryer in the basement. After learning that the tenants were being evicted and may have bore a grudge against their landlords, the court noted that police properly recognized the questionability of the complaint and needed to investigate further. *Id.* at 423. The officers visited the apartment building and confirmed that the tenants had no hot water. They discovered that the landlord had working water, that the landlord's claim that the tenants received the same water she did was false and that the landlord admitted denying access to the washer and dryer. *Id.* The court found that after an initially questionable complaint a reasonable investigation was conducted which accumulated enough evidence to support an arrest. *Id.*

Similarly, in an earlier case cited by *Hebron*, this circuit admonished officers for not conducting a sufficient investigation when a restaurant owner complained to police that patrons had left without paying their bill. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1345 (7th Cir.1985). Based solely upon the owner's claim, the police arrested the plaintiffs after asking only one question—whether they were present at the restaurant that evening. *Id.* The court rebuked the officers' lack of common sense in conducting no further investigation into the dispute over the bill when information was readily available and stated that, if explanations had been sought, the dispute may have been solved in a reasonable manner.[3] *Id.* at 345–46.

Other circuits have also established that factual circumstances may require a police officer to conduct more than a superficial investigation before determining probable cause. *Sevigny v. Dicksey*, 846 F.2d 953, 957–58 (4th Cir.1988) (no probable cause when the officer unreasonably failed to interview witnesses at the scene of an accident who would have corroborated plaintiff's story); *Merriman v. Walton*, 856 F.2d 1333, 1335 (9th Cir.1988), *cert. denied*, 491 U.S. 905, 109 S.Ct. 3188, 105 L.Ed.2d 696 (1989) (further inquiry required for probable cause when a kidnapping suspect was arrested after the police knew the victim was safely at home, the suspect was the victim's long time boyfriend and voluntarily called and cooperated with the police upon learning of the charge); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1432 (10th Cir.1984) *vacated on other grounds sub nom., City of Lawton, Okla. v. Lusby*, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), *aff'd after reconsidera-*

---

**3.** The issue of probable cause in Moore went to the jury due to questionable warrantless entry and events resulting therefrom, but the court's imposition of the duty to conduct further investigation was clear.

*tion,* 796 F.2d 1307 (10th Cir.) *cert. denied,* 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986) (no probable cause when officer refused to interview cashier at scene of shoplifting who would have confirmed plaintiff paid for the merchandise).

Defendants rely on *Gerald M. v. Conneely,* 858 F.2d 378 (7th Cir.1988) and *Gramenos,* 797 F.2d 432, to support their position that a victim or witness's testimony alone is sufficient to establish probable cause and, therefore, negate an officer's duty to conduct further investigation. They are both distinguishable. In *Gerald M.,* a ten year old victim's complaint that his bicycle had been stolen by another ten year old boy and his brother was sufficient to establish probable cause to detain the two boys. *Gerald M.,* 858 F.2d at 381. Like the instant case, there was a history of animosity between the families which, the court noted, may have created a question of the victim's reliability had the police been aware of this animosity at the time of the arrest. *Id.* But unlike our case, the police in *Gerald M.* were unaware of the families' squabbles at the time and no other evidence was shown to have given the police any reason not to believe the victim's statements. *Id.*

In *Gramenos,* a store security guard was the sole eyewitness to plaintiff's shoplifting charge and his statement alone was used to establish probable cause. *Gramenos,* 797 F.2d at 439. Although the court noted that a single witness's complaint is sufficient to establish probable cause, the security guard was distinguished as "not just any eyewitness." *Id.* The distinction was based upon the reasonable reliability that a security guard as a professional in an institutional setting would not bring a claim based on a grudge or without careful consideration. *Id.* In other words, the police had no reason to question the veracity of the guard's information.

In our case, however, Spiegel presented Kajari and Cortese with information before his arrest that should have questioned the officers' belief in Cherny's reliability and prompted a further investigation. Spiegel informed Kajari and Cortese that he had a long-standing dispute with Cherny, that he previously filed a complaint against Cherny and that a delay of almost a month had occurred before Cherny filed a battery complaint against Spiegel. The officers should then have reasonably been aware that Cherny may have had a grudge against Spiegel. Moreover, Spiegel informed the officers that independent witnesses would confirm that Cherny, and not Spiegel, committed the battery. The timing of Cherny's charge, the allegation of retribution and the availability of independent witnesses would have created doubt in a reasonable officer to warrant a further investigation.

We recognize that police officers have a difficult job and it is not their duty to conduct extensive trial-type investigations before conducting an arrest. Nevertheless, with the information Kajari and Cortese possessed, they had a reason to doubt Cherny's reliability and had readily at their disposal independent witnesses who could have clarified whether a crime had been committed at all. Additionally, this case did not deal with any exigent or emergency circumstances. *See e.g. Llaguno v. Mingey,* 763 F.2d 1560 (7th Cir.1985) (the amount of information necessary for probable cause is a function of the gravity of the crime and the danger of repetition). The situation here demonstrates no emergency was at hand and, in fact, the police had plenty of time to investigate Cherney's stale complaint and chose not to. As a result, after drawing all inferences in favor of the plaintiff from the well pleaded facts, we find Spiegel has stated a potential cause of action against defendants Kajari and Cortese for wrongful arrest and has overcome their defense of a qualified immunity at this stage of the proceeding.[4] Defendants' motions to dismiss Count I are accordingly denied with respect to defendants Kajari and Cortese.

*False Arrest Claim Against Zeilke*

Spiegel contends that Zeilke, an employee of the City of Chicago's Department of Aging, conducted an incomplete and biased investigation. As a result Spiegel

---

4. Of course, this determination may change once the parties have completed discovery in this matter and have properly developed the facts surrounding Spiegel's arrest.

charges Zielke with falsely arresting him in violation of his Fourth and Fourteenth Amendment rights. However, Zeilke, in her civilian capacity, has no special power or authority to arrest or charge anyone. 65 ILCS 5/3.1–15–25 (1993); Municipal Code of Chicago, § 2–16–010 (1992). Moreover, Spiegel has not alleged any facts against Zeilke that place Zeilke in a different position than defendants Hennelly, Brannigan and Murphy. Therefore the Court finds that defendant Zeilke is also protected by qualified immunity. Spiegel's Complaint does not sufficiently state a cause of action against Zeilke and fails to allege facts necessary for a recovery. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). As a result, defendants' motion to dismiss Count I against Zeilke is granted.

### *Wrongful Detention Claim*

■ Spiegel challenges the reasonableness of his arrest even if probable cause existed. Spiegel claims that because he was arrested rather than served with a summons and a complaint, and because the police detained him in a cell for an hour subsequent to the arrest, the five police officers and Zeilke violated his Fourth and Fourteenth Amendment rights to be free from unreasonable seizure.

Illinois law allows full custodial arrest for misdemeanors such as the plaintiff was charged. 725 ILCS 5/107–2(1)(c) (1994). The only constitutional perimeters effecting the legislatures decision to allow custodial arrest for different crimes is that the arrest must be based upon probable cause. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427 (1973). Therefore, Spiegel did not have a constitutional right to be served a summons and complaint rather than be arrested.[5]

■ Because the lawfulness of Spiegel's detention must focus again upon probable cause, we return to the discussion above

in which defendants Hennelly, Brannigan and Murphy were found to be protected by qualified immunity. The officers were entitled to rely on the arrest orders which they were carrying out as being based upon sufficient probable cause. *Gordon v. Degelmann,* 29 F.3d 295, 300 (7th Cir.1994). Nothing in the complaint alleges that these officers had any specific knowledge of the facts of the case or that these officers could not reasonably rely upon the arrest orders obtained from their other law enforcement officials. Also as stated above, defendant Zielke had no authority or power to arrest, detain or make a probable cause determination in her capacity as a civilian. The complaint does not sufficiently allege facts upon which Spiegel may recover against Zielke. Accordingly, we grant defendants Hennelly, Brannigan, Murphy and Zielke's motions to dismiss count II of the complaint.

■ Similarly, because we have found that Spiegel has adequately pled his claim for wrongful arrest against Cortese and Kajari, their motion to dismiss Count II is also denied.

### *Conspiracy Claim*

■ Spiegel contends that the five officers and Zielke conspired together to deprive him of his constitutional rights to be free from unreasonable seizures. In order to state a claim for conspiracy under § 1983, the complaint must establish conspiracy in some detail and provide some factual basis supporting the existence of a conspiracy. *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206–07 (7th Cir.1980). Conclusory statements suggesting a conspiracy are not enough to state a claim. *Id.* "A complaint inadequately alleges conspiracy when the facts it alleges are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Kunik v. Racine County,* 946 F.2d 1574, 1580 (7th Cir.1991).

---

**5.** Spiegel offers the City of Chicago Police Department Special Order 79–32 attached to his response as evidence that the officers were required to serve him with a summons rather than effectuate full arrest. Matters outside the pleadings are not to be considered for the purposes of

a 12(b)(6) motion to dismiss. However, even if considered, the order does not mandate that Spiegel be served a complaint rather than be arrested; it merely qualifies that service was an option for police to consider.

In the instant case, even when the allegations are construed favorably for the plaintiff, as they must be, Spiegel has failed to identify any acts on the part of the defendants which would possibly link them to a conspiracy. Spiegel contends that the overt acts supporting his claim include his arrest, processing and being held in custody while processed, as well as the officers' failure to thoroughly investigate the charge against him. However, these acts provide no details which could reasonably demonstrate a meeting of the minds between any of the individual defendants. No specific conversations or correspondence between any of the officers or Zielke are alleged in which to conclude the defendants conspired together to deprive Spiegel of his constitutional rights.

Rather, the acts relied on by Spiegel merely demonstrate the defendants conducting themselves during the normal course of processing a criminal complaint, irrespective of Cortese and Kajari's poor judgment during their investigation. Therefore, defendants' motions to dismiss the conspiracy claim in Count III is granted for all individual defendants.

*Policy Claim Against The City Of Chicago*

Count IV of the Amended Complaint alleges that the City of Chicago's Police Department's policies failed to provide for special investigations to be conducted in misdemeanor cases when cross charges are filed and when decisions are made whether or not to proceed by summons or arrest. As a result, Spiegel claims the individual defendants were encouraged to violate his constitutional rights.

There are a number of ways to allege that a governmental policy is involved in an unconstitutional act under § 1983. In the absence of direct evidence such as a written policy, the existence of a governmental policy or custom is usually shown by demonstrating a series of bad acts and inviting the court to infer from them that the policymakers were bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned the actions. *Jack-*

*son v. Marion County,* 66 F.3d 151, 152 (7th Cir.1995). In other words, a demonstration of enduring practices of officials or their subordinates may create liability under the statute. *Cornfield v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir. 1993). Spiegel has not alleged a series of enduring practices or bad acts, however, but focuses on the single event of his alleged improper arrest and detainment.

An unconstitutional policy can also be inferred when the complaint charges the municipality with having engaged in improper conduct directly, such as a claim that the municipality itself failed to properly train its officers to avoid inflicting unconstitutional injuries. *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Liability would attach in that case where police, while exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to policymakers who were deliberately indifferent to the need. *Id.* at 390, 109 S.Ct. at 1205.

This deliberate indifference seems to be what Spiegel is aiming for in his complaint. However, Spiegel does not demonstrate more than the one incident complained of where his alleged faulty policy or training created a constitutional violation. As a result, the allegations in the complaint simply do not satisfy the "official policy" requirements. The City of Chicago's motion to dismiss Count IV is granted.

*Spiegel's 9–102 Claim*

Spiegel contends that because the City of Chicago is the employer of the individual defendants and the individual defendants allegedly committed the constitutional violations within the scope of their employment, should they be found liable on any count, pursuant to § 9–102 of the Illinois Tort Immunity Act,[6] the City would be liable for any judgment entered against its employees.

The City contends that allowing a pre-judgment 9–102 claim would circumvent

6. Section 9–102 of the Act provides in part: A local public entity is empowered and directed to pay any tort judgment or settlement for compen-

satory damages for which it or an employee while acting within the scope of employment is liable in the manner provided in this Article.

the restriction of claims based upon *respondeat superior* set forth by *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). According to the City, because the issue under 9–102 is the employer-employee relationship, this claim does not arise from a common nucleus of operative facts under which supplemental jurisdiction would apply. However, as noted in *Ellis v. Bankhead*, 828 F.Supp. 45, 47 (N.D.Ill.1993), the supplemental jurisdiction statute, 28 U.S.C. § 1367, has broadened the scope of federal jurisdiction to include those claims that are so related to claims in the action already within the court's original jurisdiction that they form part of the same case or controversy. The issue of the City's liability is closely related within the scope of § 1367 to the claims against the individual defendants in this case. Therefore, Spiegel's claim survives the jurisdictional analysis.

█ The City also contends that this count should be dismissed because a 9–102 action is only applicable after a judgment has been entered against one of its employees. Some confusion has ensued as to whether it is proper to allow a pre-judgment claim under 9–102.

Spiegel asserts that under *Ellis*, 828 F.Supp. at 47, and *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1489 (7th Cir. 1988), which rely on *Estate of Ahmed v. County of Cook*, 146 Ill.App.3d 719, 100 Ill. Dec. 368, 497 N.E.2d 346 (1st Dist.1986), a 9–102 claim is properly brought prejudgment. Spiegel's reliance on this authority is misplaced.

In *Ahmed*, the court did not address the pre-judgment issue because the case centered around a post-judgment controversy over the interest rate applicable to the award of damages. *Estate of Ahmed*, 146 Ill.App.3d at 720, 100 Ill.Dec. at 368, 497 N.E.2d at 346. *Argento*, relying on *Ahmed*, merely finds that it is proper for a 9–102 claim to be "brought in the same action as the one against the government employee in his individual capacity." *Argento*, 838 F.2d at 1489. The issue of the propriety of a pre-judgment 9–102 claim was not addressed in *Argento* either, because plaintiff's claim in that case was also

post-judgment. Spiegel next relies heavily upon *Ellis*, which muddies the waters by seemingly misquoting *Argento* and allowing pre-judgment 9–102 claims. *Ellis*, 828 F.Supp. at 47. Nowhere in *Argento* have we found the portion cited relating to the admissibility of pre-judgment claims.

After closely examining *Ellis* and *Argento*, we believe the correct statement of the law was set forth by Chief Judge Aspen in *Rosentreter v. Munding*, 736 F.Supp. 165, 171–72 (N.D.Ill.1990), which held that 9–102 claims were strictly relegated to the post-judgment stages of the litigation. We therefore hold that a 9–102 claim cannot be brought prior to a judgment against a City employee. Accordingly, the City's motion to dismiss Count V is granted.

## CONCLUSION

For the foregoing reasons, the Court grants defendants Hennelly, Brannigan, Murphy and Zielke's motions to dismiss Counts I, II, and III. Defendants Cortese and Kajari's motions to dismiss are denied as to Counts I and II, and granted as to Count III. The defendant City of Chicago's motions to dismiss Counts IV and V are granted.

The Court will hold a status hearing on April 25, 1996 at 9:00 a.m. to set an appropriate schedule to address the issues that remain in this case.